UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RACHEL MADDOX, SHANNON MADDOX, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| vs. | ) | NO. 12-1641 |
| | ) | |
| INTEGRO USA, INC., INTEGRO INSURANCE | ) | SECTION "N" |
| BROKERS CHRISTIAN CONGREGATION OF | ) | |
| JEHOVAH'S WITNESSES, WATCHTOWER | ) | MAGISTRATE (1) |
| BIBLE AND TRACT SOCIETY OF NEW YORK, | ) | |
| INC., WESTWEGO CONGREGATION OF | ) | |
| JEHOVAH'S WITNESSES, INC., PATRICK | ) | |
| VICTOR, KATHY VICTOR | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS PATRICK VICTOR AND KATHY VICTORS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. C. P. 12(b)(6)

May IT PLEASE THE COURT

Defendants Patrick Victor and Kathy Victor submit this Memorandum of Law in support of their Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for Plaintiffs' failure to state a cause of action against them upon which relief can be granted.  The basis and authority for Defendants' motion are as follow.

**Introduction**

Plaintiffs in this action are pursuing wrongful death and survival damages pursuant to Louisiana Civil Code Section 2315 (see Plaintiffs' Petition, EXH A). They claim that Movants took their mother, Patsy Maddox, to a large gathering called a "District Convention" of Jehovah's Witnesses in Mobile, Alabama (EXH A, ¶ X), where Mrs. Maddox fell, sustaining injuries that ultimately led to her death (EXH A, ¶¶ XIII and XIV).

1

Plaintiffs claim that Movants were agents for others. The purported principals were Christian Congregation of Jehovah's Witnesses and Watchtower Bible and Tract Society of New York, Inc. However, plaintiffs have not asserted any independent theories of liability against Movants; nor can they show any such liability. Movants merely attended the convention with Plaintiffs' mother.

Plaintiffs allege generally that "the defendants" were negligent (and grossly negligent) in failing to provide adequate safety for elderly and disabled attendees of their convention. Movants had nothing to do with planning the convention, securing or preparing the site, designating the seating areas provided to elderly and disabled attendees, or providing notice or guidance about where such attendees should sit at the convention. Movants merely went to the seating that was available when they arrived.

Plaintiffs assert numerous theories of liability, none of which involve these Movants. Those theories are: 1) Defendants give a false sense of security by promising safe keeping and full accommodations for the elderly (EXH A, ¶ VII); 2) Patsy Maddox was directed away from floor seating to a location that was not appropriate for the elderly, despite being familiar with needs of the elderly from their experience hosting tens of thousands of conventions (EXH A, ¶ VIII); 3) Defendants have the responsibility to train ushers and deliver safe accommodations to the elderly who will be present (EXH A, ¶ IX); 4) Patsy Maddox was directed to leave her seat without benefit of an usher (EXH A, ¶ XII); 5) Patsy Maddox was navigating unsafe steps that lacked an adequate railing, in violation of safety codes (EXH A, ¶ XIII); 6) As promoters of a convention, Defendants have a duty not to expose the elderly to unreasonable risks of harm (EXH A, ¶ XV). Plaintiffs also claim that the defendants are grossly negligent for their failure to provide a safe place for Patsy Maddox to sit, for failure to plan safety better despite knowledge of the special needs of the elderly, etc. (EXH A, ¶¶ XVI-XXII). Plaintiffs include claims of violation of civil rights statutes (EXH A, ¶ XXIII), and constitutional provisions that Plaintiffs allege exist to protect the elderly and infirm (EXH A, ¶ XXIV). None of the foregoing assertions of negligence, gross negligence, breach of statutes or violations of constitutional provisions apply to Movants.

For these reasons, and as elaborated and supplemented below, the Court should grant this Motion to Dismiss for failure to state a claim against Movants on which relief can be granted.

**Issue Presented**

1. Whether the Petition states a claim against Movants.

**Background**

Patsy Maddox asked Patrick and Kathleen Victor to ride in their vehicle from New Orleans to Mobile, Alabama, to attend the July 1-3, 2011, District Convention of Jehovah's Witnesses held at the Mitchell Center, located on the campus of the University of South Alabama. The Victors agreed to take Mrs. Maddox with them to the convention. They arrived at their hotel in Mobile on Thursday, June 30, 2011, the day before the convention began. The following morning, Friday, July 1, by the time they arrived at the convention site, the convention had just begun.

The three entered the Mitchell Center through the main doors located on the 2nd level. The 2nd level is the main concourse of the Center. They took an elevator to the bottom floor level to seek a seat among the seats that were available for the elderly and infirm. When Mr. Victor asked an attendant on the floor level whether any seats for the elderly remained, all of the seats there were full, and they returned to the second level to look for seats there.

They rode the elevator back to the main concourse. On arrival, Mr. Victor looked for seats for the three of them. He spotted some empty seats about 15 steps above the main concourse. He asked Patsy Maddox if she felt comfortable climbing the stairs to those seats or would prefer to return to the hotel, and return the next day earlier to ensure seating on the floor level. Mrs. Maddox said she wanted to go to the seats that Mr. Victor had found. When Mr. Victor offered to aid her as she climbed the stairs, Mrs. Maddox said to leave her alone, that she could climb the stairs herself. She mounted the steps without any apparent difficulty.

At noon, Mr. Victor went outside to see if he could move their car closer to the entrance to the Mitchell Center, while Mrs. Victor and Mrs. Maddox ate lunch at their seats. After lunch, Mrs. Victor and Mrs. Maddox went down the stairs to the main concourse to use the rest room. They were back at their seats when Mr. Victor returned.

Near the end of the day's session, Mr. Victor suggested that if they left then, they could avoid the congestion of the audience dispersing all at once. The others agreed, and they left their

seats. Mrs. Victor was in the lead, Mrs. Maddox was behind her, and Mr. Victor was last as they descended the stairs.

The Victors carried the belongings of the three leaving Patsy Maddox to hold onto the hand rail as she descended the stairs, and as Patsy Maddox descended, she had ahold of the railing. When she arrived at a landing, she appeared to change hands to get ahold of the railing on the other side of her, but failed to secure her grip. She either tripped or slipped, and fell four steps to another landing below, sustaining serious injuries that ultimately led to her death.

The convention was one of many such conventions held around the United States by Jehovah's Witnesses at such public facilities. The Mitchell Center is advertised as "a 10,041-seat multi-purpose arena on the campus of the University of South Alabama in Mobile, Alabama. It was completed in 1998 and is the home court for the University of South Alabama Jaguars basketball teams. … The venue can seat 3,500 for theatrical presentations, 7,354 for front-of-arena concerts, 8,777 for the circus and auto racing, and 10,800 for full-arena concerts."[1]

Movants had nothing to do with the selection of the site for the convention. Movants were not involved in planning, safety, security, or any other aspect of the convention. Movants merely attended the convention along with Patsy Maddox.

**Standard of Review**

The Victors move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under this rule, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). If Plaintiffs fail to state a claim under the governing law, the Court must dismiss the complaint (Petition here) "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).[2]

---

[1] See http://en.wikipedia.org/wiki/Mitchell_Center.
[2] Plaintiffs assert claims pursuant to Louisiana's and U.S. Civil Rights statutes: The Louisiana Civil Rights Act for Handicapped Persons, the public accommodations provisions of the Americans with Disabilities Act, and Louisiana's White Cane Law. Plaintiffs cite to these laws by name, but not by statutory provision. Plaintiffs also

The Court reviews a motion of this nature based solely upon the complaint (petition), any documents attached to the complaint, any undisputed documents alleged or referenced in the complaint, matters of which the Court may take judicial notice, and public records.[3]

**Argument**

**I. No Legal or Factual Relationship Existed Between Patsy Maddox and Movants That Would Create a Special Duty of Care**

Plaintiffs' right of action against Movants is governed by Louisiana Civil Code Section 2315, which gives them a right of action for their mother's death if they can prove that: 1) the Movants had a legal duty to observe a certain standard of care toward their mother; 2) they breached that duty by falling below that standard of care; 3) their breach of duty was a cause-in-fact of their mother's death; and 4) the harm that occurred was the sort of harm that the Movants' legal duty was designed to prevent. *Boyer v. Johnson*, 360 So. 2d 1164 (La. 1978).[4]

A guiding legal principle by which the deficiency in Plaintiff's pleading against Movants may readily be seen is expressed in *Ramey v. DeCaire,* (La. 2004), 869 So. 2d 114, 119:

> Generally, there is an almost universal legal duty on the part of persons to conform to the standard of conduct of a reasonable person in like circumstances. *Davis v. Witt*, 02-3102, p. 13 (La. 7/2/03), 851 So. 2d 1119, 1128. Whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case and the relationship of the parties. *Id.* In the instant case, plaintiffs' allegations of facts do not show the circumstances giving rise to a duty on the parts of these particular defendants to prevent decedent's suicide. Plaintiffs' petition fails to articulate the relationship between decedent and defendants which could give rise to a finding that defendants' negligence was a substantial factor in causing decedent's suicide.[3] The lack of particular facts alleging a relationship between defendants and decedent that could give rise to a duty on the parts of

---

assert claims under the Louisiana Constitution's Article I, Section 3 Right to Individual Dignity, and Article I Section 12 Freedom from Discrimination.
[3] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-323 (2007); *Lovelace v. Software Spectrum Inc.*, 78 F3d 1015, 1017-18 (5th Cir. 1996); *Taylor v. Appleton*, 30 F.3d 1365,1370 (11th Cir. 1994); *Fecht v. The Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).
[4] We ignore for the purpose of this motion the fact that Louisiana law probably does not apply to this action since all of the acts and omissions about which Plaintiffs complain occurred in Mobile, Alabama.

> defendants to prevent decedent's suicide prevent this court from determining from the petition what duty defendants are alleged to have breached. Consequently, we cannot find at this time that the law affords a remedy to plaintiffs. We therefore conclude that defendants' peremptory exception of no cause of action should have been sustained and the district court erred in denying the exception.

*Ramey, id.* (internal footnote ignored).

In *Ramey*, the plaintiffs had claimed that the defendants' negligence had caused their relative to commit suicide. After the first lawsuit was dismissed for failure to plead a cause of action, the plaintiffs re-pled, claiming that the defendants knew of the decedent's history of substance abuse and thus owed her an elevated duty of care. The court again dismissed, finding that the pleading lacked adequate facts to show the existence of a special relationship between the decedent and the defendants to give rise to such a duty of care.

Similarly, here, Plaintiffs fail to demonstrate a relationship in fact or law between Patsy Maddox and the Victors that would give rise to a legal duty on their part to take specific action to protect Mrs. Maddox. The Victors were neither the landowners nor the lessees of the facility, which might have given rise to duties under premises liability theories. They were not assigned by any social services organization, hospital, or home health aide entity as caretakers of Mrs. Maddox, which might support a caretaker liability theory. They are merely shown to have driven Mrs. Maddox to a convention and to have sat with her. Plaintiffs do not allege that their mother was non compos mentis, incapable of exercising her own, independent will as to where she would sit in the facility, which in fact she did.

*Ramey* further acknowledged: "Generally, there is an almost universal legal duty on the part of persons to conform to the standard of conduct of a reasonable person in like circumstances. *Davis v. Witt, 02-3102, p. 13 (La. 7/2/03), 851 So. 2d 1119, 1128*. Whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case and the relationship of the parties. *Id.*" *Ramey, id*, at p. 119. The plaintiffs in both *Ramey* and this action failed to articulate a special relationship between the decedent and the defendants that could give rise to a special duty of care. The Petition fails to show how the Victors deviated from the standard of conduct of reasonable persons who attended an event with their dear friend.

Plaintiffs do assert that the Victors were agents of the other defendants, but agency creates no special relationship between Patsy Maddox and the Victors. They were friends and fellow congregation members. They rode together to the convention and sat together when they arrived. It was not the Victors' obligation to look for seats for Mrs. Maddox; she was an adult who was fully competent, and capable of choosing her own seat. The convention arena was open to the public and available for rental for events of all types. There being no special relationship between Mrs. Maddox and the Victors (*Ramey* similarly noted that the pleading in that case "failed to articulate the relationship between the decedent and defendants, which could give rise to a finding that defendants' negligence was a substantial factor in causing the decedent's suicide."), the Victors owed Patsy Maddox no special duty of care.

**II. Movants are Not Liable Under Any of the Statutory or Constitutional Claims**

Plaintiffs claim that Defendants violated the **Louisiana Civil Rights Act for Handicapped Persons**. The statute identified by that name is Louisiana Revised Statute Title 46 Section 2252, et seq., which requires, inter alia, that full and equal utilization of public services and programs be afforded to all persons without discrimination because of a handicap.

Movants had nothing to do with granting or limiting access to the Mitchell Center. They cannot possibly be liable for any violation of the foregoing statute.

Plaintiffs claim that Defendants violated the **public accommodations provisions of the Americans With Disabilities Act**. The public accommodations provisions are located in ADA's Title III. The Accommodations provisions of the ADA are contained in 42 U.S.C. 12181 through 12189, commonly referred to as Title III of the ADA. The regulations dealing with Title III accommodations in public places are contained in 28 CFR 36.102-36.104. Specifically, 28 CFR 36.104 prohibits discrimination against any "individual with a disability."

The general rule of liability under Title III is contained in ADA section 302(a), which specifies who may be held liable for a violation thereof: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of . . . any place of public accommodation **by any person who owns, leases (or leases to), or operates a place of public**

**accommodation.**"[5] (bold added). Movants are not alleged to have owned, leased, leased to others or operated the Mitchell Center.

The rest of Title III describes what constitutes discrimination prohibited under the Title and remedies available for violations. Section 203(a) provides: "a failure to design and construct facilities for first occupancy . . . that are readily accessible to and usable by individuals with disabilities . . ." violates the ADA. Movants are not alleged to have designed or constructed facilities for the Mitchell Center.

Without delving deeply into what constitutes a "disability" under the ADA (noting nonetheless that Plaintiffs have not alleged, because they could not have done so, that Patsy Maddox used a cane, crutches, walker or wheel chair to aid in her mobility, nor that she had a physical or mental impairment that substantially limited a major life activity, and thus whatever her "disability" was probably did not rise to the level of disability protected under the ADA), religious organizations are exempt from the ADA's Title III requirements for public accommodations. Section 307 of the ADA provides that "[t]he provisions of this subchapter shall not apply to private clubs… or to religious organizations or entities controlled by religious organizations, including places of worship." 42 U.S.C. § 12187. If religious organizations cannot be liable under Title III of the ADA, nor can their agents. Further, Movants cannot possibly be liable under Title III since they had nothing to do with providing accommodations to the Mitchell Center.

Plaintiffs claim that Defendants violated the **Louisiana Constitution, Section 12**. That section provides:

> In access to public areas, accommodations, and facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition.

Movants are not shown to be the ones who provided access to the Mitchell Center, nor could they be. They were attendees of the event, as was Patsy Maddox. Without any viable

---

[5] *See* ADA § 302(a) (codified at 42 U.S.C. § 12182(a)).

assertion that Movants had any authority to grant anyone access to the Mitchell Center, they cannot possibly be held liable to anyone for violation of the foregoing provision.

In sum, Movants Patrick and Kathy (Kathleen) Victor are not shown in Plaintiff's Petition to have done anything that could give rise to any claim for damages from them. The Petition fails to state a cause of action against them upon which relief can be granted.

**Conclusion**

Movants pray that the Court, upon review of the Petition filed in this case, and upon consideration of their Motion to Dismiss, and the legal authorities contained herein, dismiss them from this action, and grant them their costs and such other relief to which the Court deems Movants entitled.

Dated: July 2, 2012.

Respectfully submitted,

By /s/Terrel J. Broussard
Terrel J. Broussard
Bar No: (LSB 3531)
Montgomery Barnett LLP
3300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-3300
Tel**:** +1.504.585.3200
Fax**:** +1.504.200.8987

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system this 2nd day July 2012 and notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system or by mail.

/s/Terrel J. Broussard

9