UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RACHEL MADDOX, SHANNON MADDOX, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| vs. | ) | NO. 12-1641 |
| | ) | |
| INTEGRO USA, INC., INTEGRO INSURANCE | ) | SECTION "N" |
| BROKERS CHRISTIAN CONGREGATION OF | ) | |
| JEHOVAH'S WITNESSES, WATCHTOWER | ) | MAGISTRATE (1) |
| BIBLE AND TRACT SOCIETY OF NEW YORK, | ) | |
| INC., WESTWEGO CONGREGATION OF | ) | |
| JEHOVAH'S WITNESSES, INC., PATRICK | ) | |
| VICTOR, KATHY VICTOR | ) | |
| | ) | |
| Defendants. | ) | |

ANSWER OF
CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES, INC.

Defendant Christian Congregation of Jehovah's Witnesses, Inc. ("Christian Congregation") asserts its procedural defenses in Paragraphs 1-2; answers the allegations in the order in which they were made and in reference to the paragraph numbers assigned by Plaintiffs in the Petition they filed in state court, subsequently removed to this Court ("Petition") in Paragraphs 3-31, and answers affirmatively in Paragraphs 32-41 to wit:

PROCEDURAL DEFENSES

1. Christian Congregation avers that venue is not proper in Louisiana and this matter should be transferred to a district where venue is proper, to Mobile, AL, where the transactions and events occurred on which Plaintiffs' base their cause of action.

2. Plaintiffs have made general allegations of duty, breach, damages, and liability against all defendants, but have not specified how such allegations apply to Christian Congregation; as such, Plaintiffs have failed to state a claim against Christian Congregation on

which relief can be granted.

## ANSWERS TO ALLEGATIONS IN PETITION

3.     Christian Congregation avers that the allegations in Paragraph I(a), (c), (d), (e), and (f) require no answer from it.  With regard to the allegations in Paragraph I(b), Christian Congregation admits that it is a not-for-profit, religious corporation with its principal place of business in New York, but it denies Plaintiffs' characterization that it is a "religious group;" admits that it is authorized to do business in Louisiana; and admits that it does business in Louisiana.  Christian Congregation admits that it reimbursed plaintiffs for expenses incurred after Patsy Maddox died.  To the extent any other statement in Paragraph I alleges anything about Christian Congregation, it is denied.

4.     Christian Congregation denies personal knowledge of the allegations in Paragraph II regarding the relationship between Patsy Maddox and the Plaintiffs, the date of Patsy Maddox' death or the hospital where she treated, and therefore must deny the allegations.  Christian Congregation denies the general allegations of negligence and gross negligence on the part of all defendants; denies that Patsy Maddox was entitled to any damages, and denies any other allegation the paragraph may include about Christian Congregation.

5.     Christian Congregation admits that Patsy Maddox was one of Jehovah's Witnesses and active in the ministry, but denies for the lack of personal knowledge of the allegations in Paragraph III that her participation in the ministry of Jehovah's Witnesses was "lifelong" and "on a local and national level" as alleged in the paragraph.   Christian Congregation denies that it "solicited" her "to attend functions, make contributions, travel to conventions, and to regularly participate in the Jehovah's Witnesses (sic) through the Westwego Congregation of Jehovah's Witnesses, Inc.," *et al.*, or do any other of the activities that constitute the worship of Jehovah's Witnesses, and it denies any other allegation the paragraph may include

about Christian Congregation.

6.     Christian Congregation admits, with regard to the allegations in Paragraph IV, that all of Jehovah's Witnesses and members of the public are invited to attend all District Conventions of Jehovah's Witnesses because they are public gatherings dedicated to the worship of Almighty God Jehovah.   Christian Congregation denies, however, that it "sponsored" or "promoted," or that any of the defendants could have "sponsored" or "promoted" the District Convention held in Mobile, AL beginning on 1 July 2011 ("the District Convention") under the common dictionary meanings of those terms; denies that Patsy Maddox was under Christian Congregation's care during her attendance at the District Convention; denies that it made or engaged in "solicitations" with regard to the District Convention as alleged in Paragraph IV; and it denies that any work it did in preparation for the District Convention created a duty of care owed by it to any of the attendees. Christian Congregation's work organizing the District Convention did not create any duty owed to Patsy Maddox such that she would come under the care of "the defendants" during her attendance.  Christian Congregation admits that it organized the District Convention attended by Patsy Maddox, including the lease of the Mitchell Center for the convention, preparing the spiritual program for the convention, and other tasks associated with holding a convention, which tasks and efforts were reasonable for making the convention a success and to be held in compliance with all applicable laws of the United States, the State of Alabama, and the City of Mobile.   Christian Congregation admits that it obtained block reservations from motels and hotels in Mobile for the convenience of attendees, who were then able to make their own arrangements with the innkeepers for their own lodging and other accommodations at reduced rates.   Christian Congregation denies any other allegations the paragraph may include about it.

7.     Christian Congregation denies the allegations in Paragraph V that it is part of

"one organization, with a clear and identifiable, hierarchical structure," or otherwise as alleged in the paragraph that it is "integrated as a national organization" with other corporations.   In response to such allegations, Christian Congregation admits that it "works together" with other corporations organized by Jehovah's Witnesses; that each has its own corporate identity and is completely separate from the others; that they share the common trait of being formed by Jehovah's Witnesses, and for that reason they share the same general religious purpose. Christian Congregation denies that it, in conjunction with the Westwego Congregation of Jehovah's Witnesses, Inc. ("Westwego") and the Watchtower Bible and Tract Society of New York, Inc. ("Watchtower"), "routinely solicits in Louisiana for attendance at such District Conventions, locally and nationally," but it admits as in the preceding paragraph that it organizes District Conventions.   Christian Congregation specifically denies that it either "solicits" or "promotes" District Conventions, as alleged.   Christian Congregation denies any other allegations the paragraph may include about it.

8.      Christian Congregation admits the allegations in Paragraph VI of the Petition to the extent that it is familiar with the safety requirements for holding conventions that will be attended by the elderly and the disabled and that it receives some donations at district conventions.   Christian Congregations denies the vague allegation in the paragraph that it "intimately" knows any safety requirements because the term "intimate" is not an appropriate adjective for "safety requirements" and Christian Congregation cannot discern the degree of knowledge Plaintiffs have alleged it is supposed to have.   It also denies the vague allegation that it knows the safety requirements for the "infirm," a class of potential convention attendees that is too broad to define. Christian Congregation denies that any donations are "solicited" or that donations made at conventions are made to Westwego. Christian Congregation denies any other allegations the paragraph may include about it.

9.     Christian Congregation denies the allegations in Paragraph VII as vague; to the extent they make any specific allegations against Christian Congregation, they are denied. Christian Congregation particularly denies that it "hosts" district conventions, or that it "induces" anyone to attend district conventions by "promising safe keeping and full accommodations for the elderly, infirm, and disabled persons."

10.    Christian Congregation has no personal knowledge of what transactions or occurrences took place at the District Convention as alleged in Paragraph VIII and must, therefore, deny the allegations about Patsy Maddox' attendance at such convention.  Christian Congregation admits that it knows the safety requirements for conventions at which elderly and disabled persons are invited to attend; admits that it has organized and held many conventions, but denies the number alleged as vague.  Christian Congregation denies that it knows what safety requirements would be needed for the ill-defined class of persons designated as "infirm" in the paragraph;  denies that it "hosts" district conventions; denies that it or anyone acting for it "forced" anyone, including Patsy Maddox, to sit in any particular area, section, or seat in any convention; denies, for the lack of personal knowledge, that the seat Patsy Maddox chose to take at the District Convention was "inappropriate" for her, and denies all other allegations in the paragraph.

11.    Christian Congregation admits that it plans conventions which elderly and disabled persons are invited to attended, but denies for vagueness the allegation in Paragraph IX about "large numbers of people, known to include the elderly, infirm and/or disabled persons." It denies the allegation that it "hosted" district conventions; it denies the vague allegations about "undertakings" by "[t]he defendants" including "fully assuring and promising the necessary safe accommodations to the elderly, infirm and/or disabled persons," it denies any other allegations in the paragraph that would make it or any of the other defendants contractually obliged to

guarantee the safety of attendees fitting the broad and ill-defined class of "elderly, infirm and/or disabled persons," and it denies any other allegation in the paragraph not admitted.

12.     Christian Congregation denies the allegations in Paragraph X because they are not directed at it and it has no personal knowledge of the transactions and occurrences alleged, and also because it makes a supposition which is both vague and conclusory, that Patrick and Kathy Victor, as "members" of "the various Jehovah's Witnesses" (sic), were "encouraged" and "did" escort Patsy Maddox to the District Convention , and "on prior occasions," which constituted "assistance" that "may have been part of the religious commitment and services of Jehovah's Witnesses." To the extent the paragraph alleges anything against Christian Congregation, it is denied. Likewise, to the extent the paragraph alleges that the Victors were members of any of the corporate defendants, it is denied.

13.     Christian Congregation denies that it had any knowledge of Patsy Maddox' physical condition, and denies all other allegations in Paragraph XI.

14.     Christian Congregation denies that it has any personal knowledge of the transactions and occurrences alleged in Paragraph XII regarding Patsy Maddox' choice of a seat and decision to leave before the end of the District Convention and, as such, they are denied. Specifically, Christian Congregation denies that "ushers" were provided or required at the District Convention, and denies that Patsy Maddox it "guided" to her seat. Any other allegations directed against Christian Congregation in the paragraph are denied.

15.     Christian Congregation admits that it had control of the Mitchell Center, the arena used for the District Convention, but denies the allegations in Paragraph XIII that Patsy Maddox encountered violations of any safety codes, unsafe conditions, or "grossly negligent conditions. Christian Congregation denies the allegations concerning Patsy Maddox because it has no personal knowledge of her health condition, her level of ability or disability, or any other

circumstances related to her state of being at the time of the District Convention.

16.     Christian Congregation admits the allegations in Paragraph XIV that Patsy Maddox suffered injuries, left the District Convention by ambulance, and was taken to USA Medical center, but it denies the rest of the allegations for a lack personal knowledge of the facts alleged.

17.     Christian Congregation admits the allegations in Paragraph XV to the extent they allege that every entity that organizes an event such as a district convention owes a duty of reasonable care based upon the circumstances and applicable law, but denies the allegations in every other respect.     Specifically, Christian Congregation denies that it "sponsored" or "promoted" the District Convention, according to the common dictionary definition of those terms.

18.     Christian Congregation denies the allegations in Paragraph XVI.  Specifically, it denies liability to Plaintiffs in any way; denies that it *enticed, induced,* or *solicited* Patsy Maddox to do anything; denies that Patsy Maddox was "clearly disabled;" denies that it *directed* her "to climb stairs;" denies that its convention plan included "hosting" and "entertaining;" and denies that it neglected safety in the planning for the District Convention.

19.     Christian Congregation denies the allegations in Paragraph XVII. Christian Congregation specifically denies that it committed "gross negligence; denies that it had a "heightened duty," or any greater duty than a reasonable duty to provide a safe meeting place that complied with the laws of the United States, the State of Alabama, and the City of Mobile; and denies that it failed to comply with any duty imposed by law.

20.     Christian Congregation denies the allegations in Paragraph XVIII because the allegation are vague, fail to allege adequate facts, and barely make a conclusory statement.

21.     Christian Congregation denies the allegations in Paragraph XIX because they are

merely accusations of fault and do not allege any facts.

22.     Christian Congregation denies the allegations in Paragraph XX because they are merely accusations of fault and do not allege any facts.

23.     Christian Congregation denies the allegations in Paragraph XXI because they are merely accusations of fault and do not allege any facts.

24.     Christian Congregation denies the allegations in Paragraph XXII because they are merely accusations of fault and do not allege any facts.

25.     Christian Congregation denies the allegations in Paragraph XXIII because they are merely accusations of fault and do not allege any facts.  Further answering, Christian Congregation denies that the Louisiana Civil Rights Act for Handicapped Persons, Louisiana's "White Cane Act," or any other Louisiana law governs conduct occurring in Mobile, AL.

26.     Christian Congregation denies the allegations in Paragraph XXIV because they are merely accusations of fault and do not allege any facts.  Further answering, Christian Congregation denies that the Louisiana Constitution provides a remedy, as alleged, and denies that Louisiana law governs conduct occurring in Mobile, AL.

27.     Christian Congregation denies the allegations in Paragraph XXV because they are merely accusations of fault and do not allege any facts.  Further answering, Christian Congregation denies the vague allegations that it did anything to give Patsy Maddox "broad assurances of safety, care, custody and control that contributed to and/or resulted in her injury and death."

28.     Christian Congregation denies any personal knowledge of the relationships between Rachel, Shannon, and Patsy Maddox, and must, therefore, deny Plaintiffs' allegations in Paragraph XXVI that they are entitled to damages as persons designated to sue for wrongful death and survival actions under Louisiana law, and denies all the allegations of damages

8

contained in the paragraph.   Christian Congregation denies that Louisiana law governs allegations of damages arising from injuries occurring in Mobile, AL.   Christian Congregation also denies all other allegations contained in the paragraph seeking to make it liable for any transaction or occurrence at or during the District Convention

29.     Christian Congregation denies that it had any knowledge from which it could foresee any of the events alleged in Paragraph XXVII and denies all other allegations of liability, fault, damages, or otherwise contained in the paragraph.

30.     Christian Congregation denies that it had any knowledge from which it could glean whether Plaintiffs are entitled to damages, the amount of their alleged damages, but avers, upon information and belief, that if any damages were due, the amount of those damages would exceed the amount required for jurisdiction in federal court.

31.     Any allegations in any paragraph in the Petition that have not been admitted above are here denied.

### ANSWERING IN THE AFFIRMATIVE

32.     Watchtower does not conduct District Conventions; its only involvement with District Conventions is to publish information about them and extend an open invitation to those interested to learn more by writing to request information or by speaking with one of Jehovah's Witnesses.

33.     Christian Congregation does not "solicit" donations, and knows of no corporate entity dedicated to the work of Jehovah's Witnesses that does.   Donations made by Jehovah's Witnesses have always been on a voluntary basis and are never solicited, as was stated in *The Watchtower*, 15 August 1971:

> "The emphasis in all giving among the Witnesses is that it must be voluntary and spontaneous, from the heart. In fact, ever since the earliest days of the modern witnesses of Jehovah it has been their policy that *never should there be any*

passing of collection plates or similar *solicitations* for money." (Italics added).

34. Christian Congregation avers that all well-behaved persons are invited to District Conventions, as they are to all public meetings of Jehovah's Witnesses; that such meetings are organized like other public events at public arenas, such as the Mitchell Center at the University of Southern Alabama; that all reasonable care is given to accommodate those with special needs, and that all attendees have the freedom to choose where to sit if special seating accommodations are full. Likewise, attendees have the freedom to *not* attend if their special needs cannot be met because of the number in attendance, but that choice is a matter for each attendee to make for himself or herself.

35. Christian Congregation in no way compelled Patsy Maddox to sit in an area of the Mitchell Center that she deemed to be unsafe.

36. Christian Congregation did nothing whatsoever to overpower Patsy Maddox's free will to choose where to sit, where not to sit, or whether to attend the convention at that time and place, considering the seating choices available.

37. Upon information and belief, Christian Congregation avers that Patsy Maddox put no one at the Mitchell Center on notice that she required special seating or that exercising her choice to sit in regular seating would pose any problems or risks for her.

38. Upon information and belief, Christian Congregation avers that nothing about Patsy Maddox' appearance indicated that she had undertaken a risk of harm to herself by choosing to sit in regular seating.

39. Upon information and belief, Christian Congregation avers that the Mitchell Center is owned by the University of Southern Alabama; that the University of Southern Alabama employed architects and engineers in the designing and building of the Mitchell Center, and that those architects and engineers employed the standards imposed by the "Life Safety

Code," or other applicable codes of safety for the designing and building of such arenas as the Mitchell Center.

40.     Upon information and belief, Christian Congregation avers that it reasonably relied on the safety features built into the Mitchell Center in its planning for and holding the District Convention, and that it incurred no further responsibility for safety than what was already built into the facility, other than to provide reasonable seating for those with special needs, which it did.

41.     Christian Congregation avers that Plaintiffs have not established and cannot establish breaches of legal obligations owed to Patsy Maddox because Christian Congregation complied with all law in the conduct of the District Convention.

WHEREFORE, Christian Congregation of Jehovah's Witnesses, Inc. prays that this Answer be deemed good and sufficient; that after due proceedings are had, a judgment be rendered in its favor dismissing the claims made by Plaintiffs Rachel Maddox and Shannon Maddox, that they be cast in judgment for all costs associated herewith, and for any other relief the Court deems appropriate on the premises and the law.

Dated: 2 July 2012.

                                    Respectfully submitted,
                                    By /s/Ted M. Mitchell
                                    Ted M. Mitchell      La. Bar No. 20964
                                    3501 North Causeway Boulevard, Suite 300
                                    Metairie LA 70002-3618
                                    504-236-3966 – voice
                                    504-273-2220 – fax


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system this 2nd day of July 2012 and notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system or by mail.

/s/Ted M. Mitchell

11