UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RACHEL MADDOX, SHANNON MADDOX, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| vs. | ) | NO. 12-1641 |
| | ) | |
| INTEGRO USA, INC., INTEGRO INSURANCE | ) | SECTION "N" |
| BROKERS CHRISTIAN CONGREGATION OF | ) | |
| JEHOVAH'S WITNESSES, WATCHTOWER | ) | MAGISTRATE (1) |
| BIBLE AND TRACT SOCIETY OF NEW YORK, | ) | |
| INC., WESTWEGO CONGREGATION OF | ) | |
| JEHOVAH'S WITNESSES, INC., PATRICK | ) | |
| VICTOR, KATHY VICTOR | ) | |
| | ) | |
| Defendants. | ) | |

ANSWER OF
WESTWEGO CONGREGATION OF JEHOVAH'S WITNESSES, INC.

Defendant Westwego Congregation of Jehovah's Witnesses, Inc. ("Westwego") asserts its procedural defenses in Paragraphs 1-3; answers the allegations in the order in which they were made and in reference to the paragraph numbers assigned by Plaintiffs in the Petition they filed in state court, subsequently removed to this Court ("Petition") in Paragraphs 4-32, and answers affirmatively in Paragraphs 33-42, to wit:

PROCEDURAL DEFENSES

1.   Westwego avers that jurisdiction in Louisiana is not proper and this matter should be dismissed for a lack of jurisdiction.

2.   Westwego avers that venue is not proper in Louisiana and this matter should be transferred to a district where venue is proper, to Mobile, AL, where the transactions and events occurred on which Plaintiffs' base their cause of action.

3.   Plaintiffs have made general allegations of duty, breach, damages, and liability

against all defendants, but have not specified how such allegations apply to Westwego, and as such, Plaintiffs have failed to state a claim against Westwego on which relief can be granted.

## ANSWERS TO ALLEGATIONS IN PETITION

4. Westwego avers that the allegations in Paragraph I(a), (b), (c), (e), and (f) require no answer from it. With regard to the allegations in Paragraph I(d), Westwego admits that it is a non-profit, religious corporation with its principal place of business in Westwego, Louisiana, but it denies Plaintiffs' characterization that it is a "religious group." Westwego denies that it received donations from Patsy Maddox. To the extent any other statement in Paragraph I alleges anything about Westwego, it is denied.

5. Westwego denies personal knowledge of the allegations in Paragraph II regarding the relationship between Patsy Maddox and the Plaintiffs, the date of Patsy Maddox' death or the hospital where she treated, and therefore must deny the allegations, but upon information and belief avers that Plaintiffs are the children of Patsy Maddox; that she died on or about 20 September 2011, and that she was a patient in St. Theresa's Hospital at the time of her death. Westwego denies the general allegations of negligence and gross negligence on the part of all defendants; denies that Patsy Maddox was entitled to any damages, and denies any other allegation the paragraph may include about Westwego.

6. Westwego admits that Patsy Maddox was one of Jehovah's Witnesses for many years, but denies for lack of personal knowledge the allegations in Paragraph III that she was "a lifelong Jehovah's Witness on a local and national level, and denies that Westwego "solicited" her "to attend functions, make contributions, travel to conventions, and to regularly participate in the Jehovah's Witnesses (sic) through the Westwego Congregation of Jehovah's Witnesses, Inc.," and denies any other allegation the paragraph may include about Westwego.

7. Westwego admits, with regard to the allegations in Paragraph IV that all of Jehovah's Witnesses and members of the public are invited to attend all District Conventions of Jehovah's Witnesses because they are public gatherings dedicated to the worship of Almighty God Jehovah. Westwego denies, however, that it "sponsored," or that any of the defendants could have "sponsored" the District Convention held in Mobile, AL beginning on 1 July 2011 under the common dictionary definition of the term; denies that Patsy Maddox was under Westwego's care during her attendance at the District Convention; denies that it made or engaged in "solicitations, planning, design, programming, and . . . block room reservations" with regard to the District Convention as alleged in Paragraph IV; and it denies that any information it published about District Conventions created a duty of care owed by it to any of the attendees of any District Convention of Jehovah's Witnesses, and specifically did not create any duty owed to Patsy Maddox such that she would come under the care of Westwego while attending the District Convention. Westwego denies any other allegations the paragraph may include about it.

8. Westwego denies the allegations in Paragraph V that it is part of "one organization, with a clear and identifiable, hierarchical structure," or otherwise as alleged in the paragraph that it is "integrated as a national organization" with other corporations. In response to such allegations, Westwego admits that it "works together" with other corporations organized by Jehovah's Witnesses; that each has its own corporate identity and is completely separate from the others; that they share the common trait of being formed by Jehovah's Witnesses, and for that reason they share the same general religious purpose. Westwego denies that it, in conjunction with Watchtower Bible and Tract Society of Jehovah's Witnesses, Inc. and the Christian Congregation of Jehovah's Witnesses, "routinely solicits in Louisiana for attendance at such District Conventions, locally and nationally," but it admits as in the preceding paragraph that it publishes information about District Conventions that neither solicits nor promotes District

Conventions, as alleged. Westwego denies any other allegations the paragraph may include about it.

9. Westwego denies the allegations in Paragraph VI of the Petition.

10. The allegations of Paragraph VII are denied as vague; to the extent they make any specific allegations against Westwego, they are denied. Westwego particularly denies that it "hosts" District Conventions, or that it "induces" anyone to attend District Conventions by "promising safe keeping and full accommodations for the elderly, infirm, and disabled persons."

11. Westwego has no personal knowledge of what transactions or occurrences took place at the District Convention as alleged in Paragraph VIII and must, therefore, deny the allegations about Patsy Maddox' attendance at such convention. Westwego denies that it "hosts" District Conventions, and denies all other allegations in the paragraph.

12. For same reasons Westwego denied the allegations in Paragraphs VII and VIII, it denies the allegations in Paragraph IX that it "hosted" District Conventions; it denies the vague allegations about "undertakings" by "[t]he defendants" including "fully assuring and promising the necessary safe accommodations to the elderly, infirm and/or disabled persons;" it denies other allegations in the paragraph that would make it or any of the other defendants contractually obliged to guarantee the safety of attendees fitting the broad and ill-defined class of "elderly, infirm and/or disabled persons," and it denies all other allegations in the paragraph not admitted.

13. Westwego admits that the Victors are Jehovah's Witnesses and that they are members of a congregation of Jehovah's Witnesses located in Westwego, Louisiana, but deny that they are members, stockholders, officers, directors, employees, or agents of the corporate defendants; lacking personal information about the remainder of allegations in Paragraph X, Westwego denies the allegations in that Paragraph.

14. Westwego denies that it had personal knowledge of Patsy Maddox' physical condition, other than to aver that she lived independently, engaged in her ministry, and was generally healthy for her age group; Westwego denies all other allegations in Paragraph XI.

15. Westwego denies that it has any personal knowledge of the transactions and occurrences alleged in Paragraph XII and, as such, they are denied. Specifically, Westwego denies that it directed any attendee, as alleged in this case, to any particular seat and denies that it had anything to do with the operations of the District Convention out of which this suit arises; Westwego had nothing to do with the conduct or operations of any District Convention.

16. Westwego denies the allegations in Paragraph XIII because it has no personal knowledge of the transactions and occurrences alleged therein and it denies that it had anything to do with the operations of the District Convention out of which this suit arises; Westwego had nothing to do with the operations of any District Convention.

17. Westwego denies the allegations in Paragraph XIV because it has no personal knowledge of the transactions and occurrences alleged therein.

18. Westwego denies the allegations in Paragraph XV because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention.

19. Westwego denies the allegations in Paragraph XVI because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention. Further answering, Westwego denies the allegation that it "specifically" invited Patsy Maddox or anyone else to the District Convention as alleged in the paragraph, or that it "enticed" or "induced" anyone to attend such convention.

20. Westwego denies the allegations in Paragraph XVII because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention.

21. Westwego denies the allegations in Paragraph XVIII because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention.

22. Westwego denies the allegations in Paragraph XIX because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention.

23. Westwego denies the allegations in Paragraph XX because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention.

24. Westwego denies the allegations in Paragraph XXI because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention.

25. Westwego denies the allegations in Paragraph XXII because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention.

26. Westwego denies the allegations in Paragraph XXIII because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention. Further answering, Westwego denies that the Louisiana Civil Rights Act for Handicapped Persons, Louisiana's "White Cane Act," or any other Louisiana law governs conduct occurring in Mobile, AL.

27. Westwego denies the allegations in Paragraph XXIV because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention. Further answering, Westwego denies that the Louisiana Constitution provides a remedy on the facts alleged in this case, and denies that Louisiana law governs conduct occurring in Mobile, AL.

28. Westwego denies the allegations in Paragraph XXV because it had nothing to do with the operations of the District Convention out of which this suit arises, and it had nothing to do with the operations of any District Convention. Further answering, Westwego denies that it did anything to give Patsy Maddox "broad assurances of safety, care, custody and control that contributed to and/or resulted in her injury and death."

29. Westwego denies any personal knowledge of the relationships between Rachel, Shannon, and Patsy Maddox, and must, therefore, deny Plaintiffs' allegations in Paragraph XXVI that they are entitled to damages as persons designated to sue for wrongful death and survival actions under Louisiana law, and denies all the allegations of damages contained in the paragraph. Westwego denies that Louisiana law governs allegations of damages arising from injuries occurring in Mobile, AL. Westwego also denies all other allegation contained in the paragraph seeking to make it liable for any transaction or occurrence at or during the District Convention in Mobile, AL beginning on or about 1 July 2011 because it had nothing to do with the operations of said convention.

30. Westwego denies that it had any knowledge from which it could foresee any of the events alleged in Paragraph XXVII and denies all other allegations of liability, fault, damages, or otherwise contained in the paragraph.

31. Westwego denies that it has any knowledge from which it could glean whether Plaintiffs are entitled to damages, the amount of their alleged damages, but avers, upon

information and belief, that if any damages were due, the amount of those damages would exceed the amount required for jurisdiction in federal court.

32. Any allegations in any paragraph in the Petition that have not been admitted above are here denied.

## ANSWERING IN THE AFFIRMATIVE:

33. Westwego does not conduct District Conventions.

34. Westwego does not receive donations at District Conventions. It does not solicit donations, and knows of no corporate entity dedicated to the work of Jehovah's Witnesses that does. Donations made by Jehovah's Witnesses have always been on a voluntary basis and are never solicited, as was stated in *The Watchtower*, 15 August 1971:

> "The emphasis in all giving among the Witnesses is that it must be voluntary and spontaneous, from the heart. In fact, ever since the earliest days of the modern witnesses of Jehovah it has been their policy that *never should there be any* passing of collection plates or similar *solicitations* for money." (Italics added).

35. Westwego avers, upon information and belief, that meetings of Jehovah's Witnesses, such as District Conventions, are public meetings to which all well-behaved persons are invited; that such meetings are organized like other public events at public arenas, such as the Mitchell Center at the University of Southern Alabama; that all reasonable care is given to accommodate those with special needs, and that all attendees have the freedom to choose where to sit if special seating accommodations are full. Likewise, attendees have the freedom to *not* attend if their special needs cannot be met because of the number in attendance, but that choice is a matter for each attendee to make for himself or herself.

36. Westwego in no way compelled Patsy Maddox to sit in an area of the Mitchell Center that she deemed to be unsafe.

37. Westwego did nothing whatsoever to overpower Patsy Maddox's free will to choose where to sit, where not to sit, or whether to attend the convention at that time and place, considering the seating choices available.

38. Upon information and belief, Westwego avers that Patsy Maddox put no one at the Mitchell Center on notice that she required special seating or that exercising her choice to sit in regular seating would pose any problems or risks for her.

39. Upon information and belief, Westwego avers that nothing about Patsy Maddox' appearance indicated that she had undertaken a risk of harm to herself by choosing to sit in regular seating.

40. Upon information and belief, Westwego avers that the Mitchell Center is owned by the University of Southern Alabama; that the University of Southern Alabama employed architects and engineers in the designing and building of the Mitchell Center, and that those architects and engineers employed the standards imposed by the "Life Safety Code," or in other applicable codes of safety for the designing and building of such arenas as the Mitchell Center.

41. Upon information and belief, Westwego avers that those with the task of organizing the District Convention attended by Patsy Maddox at the Mitchell Center reasonably relied on the safety features built into that facility, and that they incurred no further liability or responsibility for safety than what was already built into the facility, other than to provide reasonable seating for those with special needs, which the organizers did.

42. Westwego is limited in its activity to owning real estate and improvements used for the worship of Almighty God, Jehovah. It is not a congregation, and does not conduct operations apart from the ownership and maintenance of the property referred to herein. As such, it has no possible liability whatsoever to Plaintiffs in this lawsuit.

WHEREFORE, Westwego Congregation of Jehovah's Witnesses, Inc. prays that this Answer be deemed good and sufficient; that after due proceedings are had, a judgment be rendered in its favor dismissing the claims made by Plaintiffs Rachel Maddox and Shannon Maddox, that they be cast in judgment for all costs associated herewith, and for any other relief the Court deems appropriate on the premises and the law.

Dated: 2 July 2012.

          Respectfully submitted,
          By /s/Ted M. Mitchell
          Ted M. Mitchell    La. Bar No. 20964
          3501 North Causeway Boulevard, Suite 300
          Metairie LA 70002-3618
          504-236-3966 – voice
          504-273-2220 – fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system this 2nd day of July 2012 and notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system or by mail.

          /s/Ted M. Mitchell