UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RACHEL MADDOX, SHANNON MADDOX, ) | | |
| ) | | |
| Plaintiff, ) | CIVIL ACTION | |
| ) | | |
| vs. ) | NO. 12-1641 | |
| ) | | |
| INTEGRO USA, INC., INTEGRO INSURANCE ) | SECTION "N" | |
| BROKERS CHRISTIAN CONGREGATION OF ) | | |
| JEHOVAH'S WITNESSES, WATCHTOWER ) | MAGISTRATE (1) | |
| BIBLE AND TRACT SOCIETY OF NEW YORK, ) | | |
| INC., WESTWEGO CONGREGATION OF ) | | |
| JEHOVAH'S WITNESSES, INC., PATRICK ) | | |
| VICTOR, KATHY VICTOR ) | | |
| ) | | |
| Defendants. ) | | |

OPPOSITION OF
WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.
TO PLAINTIFFS' MOTION TO REMAND CASE TO STATE COURT

MAY IT PLEASE THE COURT:

I.  *Remand is not warranted under the standard for "improper joinder" in this district.*

Defendant Watchtower Bible and Tract Society of New York, Inc. ("Watchtower")[1] opposes Plaintiffs' Motion to Remand because "there is no reasonable basis for [this court] to predict that the plaintiff[s] might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 569, 573 (5th Cir. 2004) (*en banc*); *African Methodist Episcopal*

---

[1] Joining Watchtower in this Opposition to the Motion to Remand are Christian Congregation of Jehovah's Witnesses, Inc. and Westwego Congregation of Jehovah's Witnesses, Inc., represented by the same counsel as Watchtower.  However, for the sake of brevity and because Watchtower removed the case to this Court, Watchtower is pleading this opposition.  Patrick and Kathy Victor have filed their own opposition to remand in keeping with their Motion to Dismiss. Integro USA, Inc. anticipates a voluntary dismissal by Plaintiffs for which it will be replaced by the insurance company with which it brokered a policy for Christian Congregation of Jehovah's Witnesses, Inc.  Thus, Integro has no interest in the Motion to Remand as it hopes a dismissal in any event.

1

*Church v. Saint James Mission Church*, No. 11-2656 c/w 11-2660, Doc. 32, p. 8 (USDC EDLA, 28 June 2012) (quoting *Smallwood*).  This case centers on the "inability of the plaintiff[s] to establish a cause of action against the non-diverse part[ies] in state court.  Importantly, [a] mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder."  *Id.* (internal quotation marks omitted).  As this Opposition demonstrates, there is not even a "theoretical possibility of recovery" because Plaintiffs have joined the Louisiana defendants merely because they are of the same faith as that of Plaintiff's decedent and would impose liability because they and the decedent acted on their faith and coincidentally, decedent fell while worshipping according to her faith.

  A.  *The* AME Church *case demonstrates why remand is not warranted.*

In *African Methodist Episcopal Church v. Saint James Mission Church*,

> this Court denied the Saint James Mission Church's Motion to Remand, holding that the Individual Defendants are nominal parties whose citizenship should not be taken into account for the purposes of diversity jurisdiction because "whatever actions the Individual Defendants took, they were done on behalf of the AME Church" and "the AME Church is, in fact, the only alleged [true defendant]."

*Id.* at p. 3.  In this case too, the individual defendants, Patrick and Kathy Victor, "are nominal parties whose citizenship should not be taken into account for the purposes of diversity jurisdiction."  According to Plaintiffs' state-court Petition, the Victors as

> members of the various Jehovah's Witnesses[2] were encouraged to and did serve as two of the primary escorts of Patsy L. Maddox to this District Convention, just as on prior occasions, although the assistance may have been part of the religious commitment and service as Jehovah's Witnesses.

Rec. Doc. 1-1, p. 7.  Taking Plaintiffs' Petition at face value, they alleged nothing more than 'The Victors acted on behalf of "the various Jehovah's Witnesses;"' and "Whatever actions the

---

[2] "Jehovah's Witnesses" identifies those persons who have publicly dedicated themselves to serve Almighty God Jehovah, who calls them "my witnesses."  Isaiah 43:10.  There are no "various Jehovah's Witnesses," and Plaintiffs' use of the name in Paragraph "X" of their Petition is meaningless other than as an ineffectual allegation that, globally, all Jehovah's Witnesses are legally connected because they are united in faith.

2

[Victors] took, they were done on behalf of [the various Jehovah's Witnesses]." *See AME Church* at p. 3 (applying the Court's language to this case). Based on Plaintiffs' own allegations, the conclusion should be the same here as it was in *AME Church*: Christian Congregation of Jehovah's Witnesses "is, in fact, the only alleged [true defendant]." *Id.*

      B.    *The allegations of fault tread upon the right of the free-exercise of religion.*

This conclusion is further supported by Plaintiffs' *in globo* allegations of fault against "the defendants" or "defendants." Rec. Doc. 1-1, pp. 5-11. They allege that the Victors and the corporate defendants, Christian Congregation of Jehovah's Witnesses, Inc. ("Christian Congregation"), Watchtower, and Westwego Congregation of Jehovah's Witnesses, Inc. ("Westwego"), are jointly and severely liable, and liable *in solido* (Prayer for Relief, Rec. Doc. 1-1, p.11), because the Victors share the same faith as those who formed and operated the corporations. See, for example, Paragraph "III" of the Petition wherein Plaintiffs allege that their mother, Patsy Maddox, the decedent in this death case, was "solicited" to "attend," to "make contributions," to "travel," and to "regularly participate" in the worship conducted by Jehovah's Witnesses. *Id.* at p. 5. They alleged that, because Patsy Maddox was "invited" by "the defendants" to attend the convention where she fell and received her injuries, she was under their care. *Id.* Because of "solicitations, planning, organizing, design, programming, and block reservations," *all* the defendants owed a duty of care to Patsy Maddox. *Id.* In Paragraph "V," Plaintiffs got to-the-point and alleged that Christian Congregation, Watchtower, and Westwego operate "as if one organization, with a clear and identifiable hierarchical, interconnected structure." *Id.* at pp. 5-6. The finding they seek is solidary liability based upon the defendants sharing one religious faith. Such a proposition would make every member of every faith responsible for the torts of every other member of that faith, which if enforced as law would prohibit one's free exercise of religion in violation of the First Amendment's "Free Exercise

3

Clause."  U. S. Const. amend. I.

>   1.   *There were no specific allegations of fault against the in-state defendants that were not tied to the worship of God by Patsy Maddox and the Victors.*

The only specific allegations against the Victors were made in Paragraph "X," quoted above.  They were "encouraged to . . . serve as the *primary* escorts of Patsy Maddox," however this allegation was qualified because it "may have been part of the[ir] religious commitment and service as Jehovah's Witnesses."  Rec. Doc. 1-1, p. 7.  No finding of fault can be made on these allegations against the Victors because these allegations do not establish any duty owed by the Victors to Patsy Maddox to guard against the injuries she suffered when she fell at the District Convention.  Moreover, these conclusory allegations are contradicted by the preceding ones.

Paragraph "VIII" alleges that "Patsy Maddox was *forced* to sit in a location . . . that was not appropriate for the elderly, infirm and disabled persons."  *Id*. at p. 6 (italics added).  Plaintiffs did not allege that the Victors "forced" her to sit where she would be at risk.  They were attendees along with Patsy Maddox, but the paragraph faults all the defendants as "hosts" of the District Convention where Patsy Maddox was "forced" to sit in a dangerous seat.  Nowhere have Plaintiffs alleged that the Victors or Westwego acted as "hosts" for the District Convention.

Paragraph "IX" alleges that "the defendants undertake to plan such events," which "undertaking" includes "promising the necessary safe accommodations to the elderly, infirm and/or disabled persons."  *Id*. at p. 8.  This contradicts the allegations in Paragraph "X," quoted above, that the Victors were merely escorts for Patsy Maddox, albeit her *primary* escorts, which raises a question.  Who and where were her *secondary* escorts?  The question does not require an answer for the purposes of this motion because the allegations in Paragraphs "VIII" and "IX" contradict those in "X."  That contradiction also highlights what is obvious, the Victors had no duty and could not have had any duty to oversee the safety of seating assignments at the District

Convention, because, like the Individual Defendants in *AME Church*, they were members of the congregation united to worship God. *See AME Church* at p. 3 (members of church "nominal parties" whose citizenship was ignored). However, unlike the Individual Defendants in *AME Church*, the Victors had no oversight responsibility for the District Convention. *See id.* (individual defendants included the "pastor" and "presiding elder.") The Victors were completely removed from any decisions, actions, or omissions that Plaintiffs alleged were breaches of duties owed to Patsy Maddox.

Plaintiffs have essentially conceded this in their allegations at Paragraph "X" that the accommodation and assistance the Victors extended to Patsy Maddox "may have been part of the[ir] religious commitment and service as Jehovah's Witnesses." Rec. Doc. 1-1, p. 7. Plaintiffs' general allegations about "all the defendants," or "the defendants" cannot overcome the limitations their allegations in Paragraph "X" impose and which logically exclude the Victors from the allegations of liability because "may have been part of the[ir] religious commitment and service as Jehovah's Witnesses," *id.*, makes them "nominal defendants" as members of their congregation, like the like the Individual Defendants in *AME Church*. *Compare* Rec. Doc. 1-1, p. 7 ("part of religious commitment") *with AME Church* at p.3 (citizenship of church members ignored). Neither the Victors nor the individual defendants in *AME Church* had anything to do with breaches of alleged obligations.

       2.    *The only allegation against the in-state defendants is religion.*

Westwego is a Louisiana nonprofit corporation formed to own and maintain immovable property in Westwego, La. to provide a place of worship there for Jehovah's Witnesses.[3] The Victors worship at the Kingdom Hall owned by Westwego as members of the English

---

[3] Affidavit of Willie Huguely, president of Westwego Congregation of Jehovah's Witnesses, Inc. (Huguely Aff.)

Congregation of Jehovah's Witnesses in Westwego, La.[4] Plaintiffs' decedent, Patsy Maddox, was also a member of the English Congregation of Jehovah's Witnesses in Westwego, La.[5] The only connection the Louisiana defendants had with the District Convention in Mobile, Alabama, where Patsy Maddox fell, was their form of worship and, in the case of Westwego, that it was formed to facilitate that form of worship in Westwego, La.[6] The Victors and Patsy Maddox were engaged in their worship at the District Convention in Mobile, Alabama. There are no allegations against the Victors that they did anything while in Alabama to cause Patsy Maddox's injuries. Their only allegation is Patsy Maddox would not have fallen "but-for" the Victors driving Patsy Maddox to the convention.

If these facts create liability on any scale whatsoever, then every person, natural or juridical, who participates in any form of worship is liable for whatever happens as a result of someone else's conduct while also engaged in that same form of worship. By this logic, every Muslim is liable for 9/11. It would be a violation of the free-exercise clause to allow these allegations to stand for any reason, even for the sake of a motion to remand, because the Plaintiffs cannot sustain them. "[T]here is no reasonable basis [on which] the plaintiff[s] might be able to recover against [these] in-state defendant[s]." *Smallwood* at 573; *AME Church* at p. 8.

    C.    *Plaintiffs have pleaded "a mere theoretical possibility of recovery."*

In their Memorandum in Support of their Motion to Remand, Plaintiffs state

> At minimum, as set out further below, under theories of *guarde*(sic), agency, mandate, voluntary undertaking,[7] and/or breach of duty of care owed to the deceased, Patsy Maddox, the Victors and/or WCJW, both Louisiana residents/entities, may be liable to Plaintiffs and, therefore, their citizenship may

---

[4] Declaration of Patrick Victor in Support of Opposition (Victor Declaration).
[5] *Id*. and Huguley Aff.
[6] Huguley Aff.
[7] Watchtower defers to and adopts by incorporation the Victors' analysis in Opposition to Remand of Plaintiffs' theories of recovery on agency/mandate and voluntary undertaking, and finds it unnecessary to reiterate that analysis here because the allegations in the petition do not allege any facts on which liability can be imposed for agency/mandate or by reason of a voluntary undertaking, or breach of contract.

> not be disregarded by this Court and this matter should be remanded to the 24th Judicial District Court, State of Louisiana.

Rec. Doc. 19-1, p. 3. Plaintiffs have pleaded "[a] 'mere theoretical possibility of recovery under local law'" that the Louisiana defendants "may be liable" under the proposed theories to support Plaintiffs' case. *AME Church* at p. 8 (quoting *Smallwood* at 573). Such a "theoretical possibility" "will not preclude a finding of improper joinder." *Id.*

### 1. *Plaintiffs' pleadings and affidavit do not support a theory of liability.*

Plaintiffs allegations, and supporting affidavit, against the Victors and Westwego, provide no basis for predicting that they might be able to recover a remedy from them, and they have come forward with no facts to "preclude a finding of improper joinder" in their Motion to Remand. See "Declaration of Rachel Maddox and Shannon Maddox," Exhibit "A" to Motion to Remand, Rec. Doc. 19-3, wherein Plaintiffs' merely verified their allegations further and expounded upon the concept that co-worshippers who are encouraged to assist each other worship God create a legal duty for other co-worshippers to guard against risks that they could not foresee.

The concluding assertion in Paragraph 8 of their affidavit makes this unsupportable theory-of-the case abundantly clear.

> Affiants considered their mother to be in the care of the Victors, who provided their escort service to Patsy Maddox at the arranging of the Westwego Congregation of Jehovah's Witnesses church.

*Id.* What Plaintiffs' "considered" is not the same as establishing legal liability on the basis of provable facts.

### 2. *Plaintiffs have opened-the-door to "pierce the pleadings."*

The foregoing allegation-couched-as-fact creates exactly the situation in which a court may "pierce the pleadings" when "it is apparent that the plaintiff has 'misstated or omitted'

7

determinative facts that would affect the propriety of joinder, and conduct a summary inquiry." *AME Church* at p.9 (citing *Smallwood* at 573).  That is, the Court looks at the motion to remand like a motion to dismiss under Rule 12(b)(6) but digs deeper when necessary to find "determinative facts."  *Id.*  Plaintiffs' affidavit is a tacit admission that it is necessary for the Court to "pierce the pleadings" to determine "facts that would affect the propriety of joinder."

Whether Plaintiffs "*considered* their mother to be in the care of the Victors . . . at the arranging of [Westwego]" is not relevant or material.  Rec. Doc. 19-3.  Neither is the rest of their affidavit relevant or material in which they allege that reimbursement for transportation costs was "compensation" for the Victors, which reimbursement Westwego "encouraged" persons similarly situated to Patsy Maddox to pay.  *Id.*  If there were foreseeable risks that could have been mitigated by any of the defendants to prevent Patsy Maddox from falling, they were not risks associated with the Victors transporting Patsy Maddox to the convention or attending it with her.

Plaintiffs had a burden to make allegations of fact showing they had a cause of action, and merely pleading "conclusory allegations, unwarranted factual inferences, or legal conclusions" did not satisfy that burden.  *See Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010); *and see In re FEMA Trailer Formaldehyde Prods. Liab. Litig*., MDL No. 07-1873, Doc. 24196, pp. 9 (quoting *Gentilello* at 544) (Rule 12(b)(6) standard).  Under the Rule 12(b)(6) standard, the facts alleged are assumed to be true but with that assumption they must be able to rise "above the speculative level."  *AME Church* at p. 9 quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> [T]he court is not bound to accept as true legal conclusions couched as factual allegations.  In other words, a complaint must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  The court should not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions."

*AME Church* at pp. 9-10, quoting *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005), and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 555.

Plaintiffs' have merely alleged their conclusions and shown how they reached for inferences that the Victors and Westwego were at fault for Patsy Maddox's injuries, but they have come forward with no facts. The facts show that the Victors and Westwego had nothing to do with the planning, organizing, or operations of the District Convention where Patsy Maddox fell. Even looking behind the pleadings does not help the Plaintiffs because their claim is based upon the erroneous theory that the defendants are jointly and severely liable, and liable *in solido*, because they and Patsy Maddox were engaged in the exercise of their common faith. This raises the question of whether any law imposed any duty upon the defendants to protect Patsy Maddox and whether her injuries were caused by a breach of any duty so imposed.

II.     *The Louisiana defendants owed no duty under Alabama or Louisiana law.*

    A.     *Alabama law provides no remedy for the Plaintiffs.*

In Alabama, a Plaintiff's own negligence is a bar to recovery. Ala. R. Civ. P. 8(c)); *Jackson v. Waller*, 410 So.2d 98 (1982). Accordingly, Patsy Maddox's own failure to keep her balance would bar recovery in Alabama.[8] More importantly, though, a wrongful death action must be brought in a court located in Alabama by the estate representative of the deceased. Ala. Code §6-5-410. Therefore, if Alabama law applies, this lawsuit against all defendants must be dismissed because suit was brought in Louisiana by descendants of a decedent, not her succession representative. Accordingly, Plaintiffs have only pleaded a cause of action under Louisiana law for wrongful death.[9]

---

[8] Victor Declaration.
[9] Watchtower notes that a survival action created by La. Civ. Code art. 2315.1 was created "in favor" of those in the class first identifiable from the list of persons *in whose favor* the action could be brought. Distinguish this from the wrongful death action created by La. Civ. Code art. 2315.2 in which the cause of action is the "right" of the

9

B.  *Louisiana law provides no remedy for the Plaintiffs.*

1.  *Negligence.*

If Louisiana law applies, the cause of action claimed would have to arise under La. Civ. Code art. 2315's prohibition against negligence because Plaintiffs have generally alleged a duty owed by "the defendants" to protect Patsy Maddox's interests at the District Convention in Mobile, Alabama, and alleged that they breached the duty.[10]  This Court has recently provided a detailed analysis of how and when Louisiana law imposes this general duty to avoid conduct that would cause harm to others, which analysis is worth quoting at length:

> To determine whether the complaint states a claim for negligen[ce] . . ., the Court turns to the substantive law of Louisiana.  The source of negligence liability in Louisiana is Louisiana Civil Code article 2315, which states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code Ann. art. 2315(A)(2010).  This article tells us that one who damages another by his or her "fault" is obliged to repair it.  However, as the Supreme Court of Louisiana has explained, the article "does not tell us...when the author of the damage is at fault."  *Pitre v. Opelousas Gen. Hosp.*, 530 So. 2d 1151, 1156 (La. 1988).  "The framers conceived of fault as a breach of a preexisting obligation..., and they left it to the court to determine in each case the existence of an anterior obligation which would make an act constitute fault."  *Id*.
>
> In making this determination, the Supreme Court of Louisiana has employed a "duty-risk" analysis. To establish liability for negligence, a plaintiff must prove each of the following:  "(1) given the relationship and circumstances of the parties, does the law impose upon the defendant a duty of reasonable conduct for the benefit of the plaintiff, the violation of which is considered to be

---

class first identifiable from the list of persons in whom the legislature created a right of action.  Watchtower suggests that there is no proper party plaintiff to pursue the survival action alleged by Plaintiffs for injuries Patsy Maddox suffered before she died.  The only cause of action properly pleaded by these plaintiffs was the claim for wrongful death.

[10] Plaintiffs have alleged certain statutory causes of action that could not possibly apply to Defendants Westwego and the Victors because Plaintiffs have not specifically alleged facts on which to conclude that Westwego or the Victors had a duty to comply with the statutory duties imposed for safety at an event like the District Convention, or that they could have done anything to assure such compliance.  Plaintiffs made conclusory allegations that "the defendants" owed such statutorily imposed duties for safety, but alleged no facts on which any such duty was imposed on the Victors or Westwego in Louisiana for a public event held in Alabama.    Plaintiffs must come forward with specific facts because conclusory allegations will not suffice when "[a] mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder."  *Smallwood* at 573; *AME Church* at p. 8. Therefore, the only duty pleaded had to be the general duty to avoid risks caused by a defendant's actions under La. Civ. Code art. 2315.  See also the Victors' Opposition to Remand disposing of the theoretical causes of action under agency/mandate and voluntary undertaking.

fault? (2) If the defendant owed such a duty, did his conduct fall short of the standard and come within the scope set by law? (3) Did the defendant's negligence in fact cause damage to the plaintiff ('cause in fact')? (4) Should any of the damage to the plaintiff be ascribed in law to the defendant, and, if so, should the defendant be held liable for every kind of damage done to each of plaintiff's interests ('legal cause')?" *Pitre*, 530 So. 2d at 1155.

Thus, the "threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc*., 923 So. 2d 627, 633 (La. 2006). "Whether a duty is owed is a question of law." *Lemann*, 923 So. 2d at 633. "The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id*. "When a plaintiff articulates a general rule or principle of law that protects his interests, it is necessary for the court to determine whether the rule is intended to protect him from the particular harm alleged, an inquiry which involves both the duty and causation elements of the negligence formulation." *Meany v. Meany*, 639 So. 2d 229, 233 (La. 1994). Stated another way, in certain cases part of the duty inquiry may be: "was the defendant under a duty to protect each of the plaintiff's interests affected against the type of damage that did in fact occur?" *Pitre*, 530 So. 2d at 1155.

"In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented." *Lemann*, 923 So. 2d at 633. In doing so, "the court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiff's harm and the defendant's conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant's activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving." *Meany*, 639 So. 2d at 233.

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig*., MDL No. 07-1873, Doc. 24196, pp. 9-11 (USDC EDLA, 18 January 2012).

"[T]he threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Id.* at p.10. On the facts alleged and the specific facts presented in this case, "given the relationship and circumstances of the parties," "the law [does not] impose upon the defendant a duty of reasonable conduct for the benefit of the plaintiff" because neither the Victors nor Westwego had any ability to assure "reasonable conduct" by persons over which they had not control. Moreover, Plaintiffs have not alleged that the Louisiana defendants engaged in conduct that proximately caused Patsy Maddox's injuries, *i.e.*, there were no facts on

which to establish "legal cause" arising from a breach of a duty not to be negligent. Indeed, there is no causal link between any actions by the Louisiana defendants and Patsy Maddox's injuries.[11]

2.   *The Louisiana defendants were not vicariously liable.*

*Assuming*, strictly for the sake of argument, there was a breach of any duty of "reasonable conduct" owed to Patsy Maddox while she attended the District Convention, the Louisiana defendants had no way to assure such reasonable conduct would be performed for her benefit. Contrary to Plaintiffs' allegation, the Louisiana defendants were not liable under a theory of *garde* because they had no ownership, possession, custody, or control over any persons or things at the District Convention. *See Loescher v. Parr*, 324 So. 2d 441, 447-448 (La. 1975) (Tate, J.) (comprehensive discussion of *garde*). Justice Tate covered succinctly the concept commonly referred to as "liability without fault" or "vicarious liability," but it is not just so because the conclusion of fault arises from the harm caused by a person or thing over which the defendant had control and should have *guarded* against the harm that occurred. The fault lies in letting the injury happen. *See, e.g.,* La Civ. Code art 2320 (master liable for servant when he could have prevented the damage).

Plaintiffs have not alleged that the Louisiana defendants committed an act that was the proximate cause of Patsy Maddox's injuries. They have only alleged that their conduct was a "but-for" cause of her injuries. Therefore, the Plaintiffs must identify a source other than simple negligence before Plaintiffs' theory of recovery could be sustained. Already noted is that La.

---

[11] At best, Plaintiffs have alleged that the Louisiana defendants engaged in conduct that was a "but-for" cause of Patsy Maddox's injuries, *i.e.*, if the Victors did not transport her to the convention and Westwego had not "encouraged" or "solicited" her to attend the convention, she would not have fallen. That is the greatest stretch possible for making a case of "but-for" causation because Patsy Maddox could very well have attended the convention without any action by the Louisiana defendants. As Plaintiffs have made clear in their Motion to Remand "Patsy L. Maddox was a life long Jehovah's Witness on a local and national level." Rec. Doc. 19-1, p. 2. She needed no prompting by Westwego or particular assistance by the Victors to attend. She very well could have attended the convention with anyone, *even Plaintiffs*, and the same result would have been just as likely to occur.

Civ. Code art. 2320 imposes a duty on "masters" to answer "for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed," but only if they "might have prevented the act which caused the damage, and have not done it." There is an absence of evidence that any "servants" of Westwego or the Victors caused any damage "in the exercise of the functions in which they [were] employed." *Id*. Moreover, there is no evidence that the Louisiana defendants "might have prevented the act which caused the damage, and [did not do] it." *Id*.

La. Civ. Code arts. 2317 (general rule of vicarious liability), 2317.1 (liability for ruin, vice, or defect in things), 2318 (liability for minors), 2319 (liability for interdicts), 2320 (liability for servants, students, or apprentices), 2321 (liability for animals), 2322 (liability for ruin of a building), and 2322.1 (liability for the use of blood and tissue) cover the gamut of vicarious liability in Louisiana law. However, Plaintiffs have alleged no facts upon which the liability for the conduct of others or the ruin, vice, or defect in a thing can be laid at the feet of the Louisiana defendants in this case. They have only alleged that the Louisiana defendants were engaged in the same worship as Patsy Maddox and because of that, she attended the District Convention in Mobile, Alabama where she fell and suffered injuries. That cannot establish liability on the part of the Louisiana defendants under any Louisiana cause of action for vicarious liability.

       3.    *Plaintiffs neither alleged nor established facts for breach of contract.*

Plaintiffs' allegations in Paragraph's III, IV, V, VI, VII, IX, and XVI, about "promoting and/or soliciting;" "solicitations" for "participation," "donations," and attendance at conventions; inducing by promises of safety; fully assuring and promising . . . safe accommodations;" and "undertakings" do not allege negligence or gross negligence, but instead allege breach of contract, for which Plaintiffs have failed to allege the elements of any breach of contract. Moreover, they have not come forward on their Motion to Remand to support these general

allegations of contract breach. "[T]here is no reasonable basis for [this court] to predict that the plaintiff[s] might be able to recover against an in-state defendant [for breach-of-contract] . . . [to] preclude a finding of improper joinder" because there was no contractual or other obligation to breach. *Smallwood* at 573; *AME Church* at p. 8. Therefore, a finding of "improper joinder" is warranted.

III. *Affirmative facts that make clear the absence of any duty owed to Patsy Maddox.*

    A.    *Westwego*

Westwego is a nonprofit corporation,[12] and the Louisiana Nonprofit Corporation Law, La.R.S.12:201, et seq., states that "the affairs of the corporation shall be managed by a board of directors." La.R.S.12:224. It further provides that the board of directors shall elect executive officers; may appoint "other officers and agents as may be necessary for the business of the corporation," and "[o]fficers and agents shall have such authority and perform such duties in the management of the property and affairs of the corporation as may be prescribed in the by-laws or by the board." La.R.S.12:225(A), (B), and (D). "Corporations really do not have any uniform or inherent 'nature.'" 7 Louisiana Civil Law Treatise, Morris and Holmes, "Business Organizations," §7.01, p.267 (1999). Corporations, therefore, cannot act without the agency of natural persons, their directors, officers, or agents.

Westwego had no ability to do any of the acts alleged as omissions by Plaintiffs; neither could it have prevented the acts alleged by Plaintiffs as negligence or other violations of a duty because it had no directors, officers, or agents performing any of its business or conducting any of its affairs in connection with the District Convention,[13] and Plaintiffs have not alleged any facts to the contrary. Westwego was minding its own business affairs in Louisiana when the acts or omissions alleged by Plaintiffs occurred in Alabama.

---

[12] Huguely Aff.
[13] Huguley Aff.

Plaintiffs' Petition can be construed as making allegations that "the defendants" did acts in Louisiana that encouraged or compelled Patsy Maddox to attend the District Convention. However, none of those allegations, even if true, can be attributed to Westwego because its business only concerns observing corporate formalities and maintaining the immovable property it owns at 1001 Victory Drive in Westwego, Louisiana 70094 where it provides a place of worship for Jehovah's Witnesses.[14] If Patsy Maddox had suffered injuries on Westwego's premises, then Plaintiffs might have had a cause of action against Westwego based upon an allegation that it failed to guard against risks posed by the premises to invitees. However, that is not the case. Patsy Maddox fell at the District Convention in Alabama, over which Westwego had no control.[15]

Under Louisiana Law, Westwego owed no duty to Patsy Maddox connected with her attendance at the District Convention in Mobile, Alabama. Plaintiffs alleged no specific facts, they have no specific facts to adduce by any evidence, and would not discover any facts on which to establish any duty because there is no such evidence. Plaintiffs' alleged cause of action fails upon the consideration of the first element of their claim. There was no duty. Plaintiffs cannot establish the requisite duty and their lawsuit against Westwego should be dismissed as a matter of law. Without evidence of a duty, "there is no reasonable basis for [this court] to predict that the plaintiff[s] might be able to recover against [Westwego]." *Smallwood* at 573; *AME Church* at p. 8.

C.   *The Victors*

The Victors have stated in their Answer and affirmed[16] that they do not conduct District Conventions. Rec. Doc. 8, p. 2 (Answer). Patsy Maddox asked to ride with the Victors in their

---

[14] *Id.*
[15] *Id.*
[16] Patirck Victor's Declaration in Support of Opposition to Remand.

vehicle from New Orleans to Mobile, Alabama, to attend the District Convention. Rec. Doc. 7-1, p. 3 (Memorandum 12(b)(6) Motion).[17] When the three of them arrived at the convention site, there was no seating in the elderly or disabled section. *Id.* They took seats in the grandstand area of the arena, about 15 steps above the main concourse. *Id.* Patsy Maddox refused to return to their hotel and forego the program for that day, choosing instead to climb the stairs to available seating. *Id.* She also refused assistance climbing the stairs and ascended them without difficulty. *Id.* Patsy Maddox descended the stairs during the afternoon break and ascended them again before the afternoon program began. *Id.* When the three left before the end of the program, Patsy Maddox descended the stairs behind Mrs. Victor and ahead of Mr. Victor; the Victors carried the belongings of all three so Patsy Maddox would have her hands free descending the stairs. *Id.* at p. 4. At the landing where she had to change her grip on the rail, she either slipped or tripped as she changed hands for holding the rail and fell down the stairs from the landing to the floor. *Id.*

Under Louisiana Law, the Victors owed no duty to Patsy Maddox connected with her attendance at the District Convention in Mobile, Alabama. They merely accompanied her to the convention and provided her a ride. Any reimbursement for costs, or any encouragement to a fellow worshipper is beside-the-point and completely irrelevant to a consideration of "duty-risk" or any other form of liability. As with Westwego, Plaintiffs alleged no specific facts, they have no specific facts to adduce by any evidence, and would not discover any facts on which to establish any duty because there is no such evidence. Plaintiffs' alleged cause of action fails upon the consideration of the first element of their claim. There was no duty. Plaintiffs cannot establish the requisite duty and their lawsuit against the Victors should be dismissed as a matter of law. Without evidence of a duty, "there is no reasonable basis for [this court] to predict that

---

[17] *Id.*

the plaintiff[s] might be able to recover against [Westwego]." *Smallwood* at 573; *AME Church* at p. 8.

## CONCLUSION

For all the foregoing reasons, Defendant Watchtower Bible and Tract Society of New York, Inc. – in conjunction with Christian Congregation of Jehovah's Witnesses, Inc., Westwego Congregation of Jehovah's Witnesses, Inc., and with Patrick Victor and Kathy Victor filing a separate opposition – suggests to this Honorable Court that Plaintiffs' Motion to Remand be denied.

Plaintiffs have alleged nothing more in their state-court Petition or expounded in their Motion to Remand than a theory that 'the Louisiana defendants are liable for Patsy Maddox's fall because they encouraged her to attend the District Convention, provided her with transportation there, and attended it with her.' They seek to establish liability solely because the Louisiana defendants shared the same faith and acted upon it. That is not merely "a theoretical possibility of recovery under local law;" it is a theory without any basis in local law because neither Louisiana nor any other state's law imposes liability merely because people worship together. "There is no possibility of recovery by the plaintiff[s] against [the] in-state defendant[s]. There is no basis for remand because the Louisiana defendants were "improperly joined."

Plaintiffs' Motion to Remand must be DENIED.

Dated: 26 July 2012.

                                                                                    Respectfully submitted,
By /s/Ted M. Mitchell
Ted M. Mitchell    La. Bar No. 20964
3501 North Causeway Boulevard, Suite 300
Metairie LA 70002-3618
504-236-3966 – voice
504-273-2220 – fax

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system this 26th day July 2012 and notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system or by mail.

/s/Ted M. Mitchell