UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RACHEL MADDOX, SHANNON MADDOX, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| vs. | ) | NO. 12-1641 |
| | ) | |
| INTEGRO USA, INC., INTEGRO INSURANCE | ) | SECTION "N" |
| BROKERS CHRISTIAN CONGREGATION OF | ) | |
| JEHOVAH'S WITNESSES, WATCHTOWER | ) | MAGISTRATE (1) |
| BIBLE AND TRACT SOCIETY OF NEW YORK, | ) | |
| INC., WESTWEGO CONGREGATION OF | ) | |
| JEHOVAH'S WITNESSES, INC., PATRICK | ) | |
| VICTOR, KATHY VICTOR | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION OF PATRICK AND KATHY VICTOR
TO PLAINTIFFS' MOTION TO REMAND CASE TO STATE COURT**

MAY IT PLEASE THE COURT:

Plaintiffs' motion to remand claims that they have pled a viable cause of action against Defendants Patrick and Kathy Victor, two of the three in-state defendants sued by Plaintiffs. However, as their pleading shows, "there is no reasonable basis for [this court] to predict that the plaintiff[s] might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 569, 573 (5th Cir. 2004) (*en banc*). All they have pled against the Victors is a "theoretical possibility of recovery under local law [which] will not preclude a finding of improper joinder." *Id.* (internal quotation marks omitted).

1

I. **The Removal is Based Upon Plaintiffs' Inability to Obtain a Judgment for Recovery Against the Louisiana Defendants. Fraudulent Joinder is Not Pled.**

Plaintiffs spend much time in their memorandum in support of their motion to remand showing why the defendants have failed to adequately plead fraudulent joinder in their removal pleadings. However, the removal was founded solely on Plaintiffs' inability to demonstrate the possibility of proving a cause of action against the in-state defendants in state court. As the Fifth Circuit has long recognized, there are two ways to sustain removal to federal court: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir. 2003). Plaintiffs erroneously center attention in their memorandum on the first of the two, and fail to demonstrate how they can defeat the second.

According to Plaintiffs' Petition, the Victors "serve[d] as two of the primary escorts of Patsy L. Maddox to this District Convention, just as on prior occasions, although the assistance may have been part of the religious commitment and service as Jehovah's Witnesses." Rec. Doc. 1, p. 7.

Accepting these allegations as true for consideration of the motion to remand, the Victors are alleged to have undertaken acts "on behalf of [the various Jehovah's Witnesses]." Rec. *id.* In their attempt to show that they have pled more than a mere theoretical possibility of recovery, Plaintiffs' Memorandum in Support of their Motion to Remand claims they can recover from the Victors "under theories of *guarde*, agency, mandate, voluntary undertaking, and/or breach of duty of care owed to the deceased, Patsy Maddox." Rec. Doc. 19-1, p. 3.  Their Petition neither states nor supports any such theories of recovery.

### A.  The Theory of Garde Does Not Apply.

The first theory of liability, "guarde" (more often spelled "garde"), comes from Louisiana Civil Code Article 2317, which provides, in pertinent part: "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." *La. Civ. Code. art. 2317*. Article 2317.1, added to the Louisiana Civil Code in 1996, requires that an injured plaintiff prove the guardian "knew or, in the exercise of reasonable care, should have known" of the unreasonable risk of harm presented by the thing that was under the defendant's control prior to the accident. *La. Civ. Code. art. 2317.1*.

Before a defendant can be held liable under Article 2317, the plaintiff must prove that 1) the thing which caused damage was in the defendant's custody and control (garde); 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by a defect. *Socorro v. City of New Orleans*, 579 So.2d 931, 937 (La. 1991); *McKey v. Gen. Motors Corp.*, 691 So. 2d 164, 168 (La. App. 1 Cir. 1997).

Custody and control (garde) are distinct from ownership and refer to a person's supervision and control over some thing or device that poses an unreasonable risk of harm. *Tyler v. Our Lady of the Lake Hosp., Inc.*, 696 So. 2d 681, 685 (La. App. 1 Cir. 1997). The determination of who has garde over a thing is made through a process of policy considerations similar to that used in determining other delictual duties. *King v. Louviere*, 543 So. 2d 1327, 1328-29 (La. 1989).

> To assist the trier of fact in this deliberation th[e supreme] court has set forth several general principles: the liability arises from the guardian's legal relationship to the thing whose defect creates an unreasonable risk of injury to others. The garde is the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others. The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. The guardian is in a better position than the

3

innocent victim to detect, evaluate and take steps to eliminate an unreasonable risk of harm arising in the thing.

*King*, 543 So. 2d at 1329 (citations omitted). More specifically, as stated in Ellison v. Conoco, Inc., 950 F.2d 1196 (5th Cir. 1992), "where an owner never had possession of a thing, he did not acquire *garde* in the first place … [b]ecause [the owner] never possessed, controlle, or operated [it]. [I]t follows that [he] was never in a position to correct defects that might have arisen." (italics in original.) That well-describes why *garde* does not apply to the facts of this case. The Victors never had possession of the arena or its seating.

As shown by this brief review of the law of garde, it has no application to the facts asserted in Plaintiffs' petition, or to those contained in Plaintiffs' Declaration. The thing over which the Victors had control was their vehicle. They had no control over the arena, or the availability of seating. <u>See</u>, Exhibit A. They found some available seats, and Patsy Maddox made the choice whether to take them. *Id.*

### B.    The Theory of Agency Does Not Apply.

Plaintiffs next assert agency as a theory by which to find the Victors liable to them. It is an odd stretch since the law of agency binds an agent's principal, not vice-versa. Plaintiffs did not cite to any legal authority in support of their theory of liability based on agency.

Louisiana Civil Code Article 3012 provides that, "[an agent] who has communicated his authority to a person with whom he contracts in that capacity, is not answerable to the latter for anything done beyond it, unless he has entered into a personal guarantee." *La. Civ. Code. art. 3012*. Consistent with Article 3012, Article 3013 prohibits an agent from being held liable to a person with whom he contracts, unless he has bound himself personally or he has exceeded his authority without disclosure. *La. Civ. Code. art. 3013*.

Plaintiffs' Petition asserts that the Victors acted as agents of the other defendants, but they do not contend that the Victors exceeded their authority without disclosure, or that they entered into a personal guarantee with Patsy Maddox. They assert merely that the Victors were engaged in the scope of their agency in taking Mrs. Maddox to the convention and in aiding her in finding a seat there. Louisiana law thus exonerates the Victors under the law of agency.

### C.     The Theory of Mandate Does Not Apply.

The next theory Plaintiffs offer is "mandate." Again, they did not brief the law of mandate. It is worthwhile to at least peruse what the Louisiana Civil Code provides:

> La. Civ. Code. art. 2989. A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal.

> La. Civ. Code. art. 2990. In all matters for which no special provision is made in this Title, the contract of mandate is governed by the Titles of "Obligations in General" and "Conventional Obligations or Contracts."

> La. Civ. Code. art. 2991. The contract of mandate may serve the exclusive or the common interest of the principal, the mandatary, or a third person.

> La. Civ. Code. art. 2992. The contract of mandate may be either onerous or gratuitous. It is gratuitous in the absence of contrary agreement.

> La. Civ. Code. art. 2993. The contract of mandate is not required to be in any particular form.
> Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form.

> La. Civ. Code. art. 2994. The principal may confer on the mandatary general authority to do whatever is appropriate under the circumstances.

> La. Civ. Code. art. 2995. The mandatary may perform all acts that are incidental to or necessary for the performance of the mandate.
> The authority granted to a mandatary to perform an act that is an ordinary part of his profession or calling, or an act that follows from the nature of his profession or calling, need not be specified.

5

La. Civ. Code. art.. 2996. The authority to alienate, acquire, encumber, or lease a thing must be given expressly. Neither the property nor its location need be specifically described.

La. Civ. Code. art. 2997. Authority also must be given expressly to:

> (1) Make an inter vivos donation, either outright or to a new or existing trust or other custodial arrangement, and, when also expressly so provided, to impose such conditions on the donation, including, without limitation, the power to revoke, that are not contrary to the other express terms of the mandate.
>
> (2) Accept or renounce a succession.
>
> (3) Contract a loan, acknowledge or make remission of a debt, or become a surety.
>
> (4) Draw or endorse promissory notes and negotiable instruments.
>
> (5) Enter into a compromise or refer a matter to arbitration.
>
> (6) Make health care decisions, such as surgery, medical expenses, nursing home residency, and medication.

La. Civ. Code. art. 2998. A mandatary who represents the principal as the other contracting party may not contract with himself unless he is authorized by the principal, or, in making such contract, he is merely fulfilling a duty to the principal.

La. Civ. Code. art. 2999. A person of limited capacity may act as a mandatary for matters for which he is capable of contracting. In such a case, the rights of the principal against the mandatary are subject to the rules governing the obligations of persons of limited capacity.

La. Civ. Code. art. 3000. A person may be the mandatary of two or more parties, such as a buyer and a seller, for the purpose of transacting one or more affairs involving all of them. In such a case, the mandatary must disclose to each party that he also represents the other.

La. Civ. Code. art. 3001. The mandatary is bound to fulfill with prudence and diligence the mandate he has accepted. He is responsible to the principal for the loss that the principal sustains as a result of the mandatary's failure to perform.

La. Civ. Code. art. 3002. When the mandate is gratuitous, the court may reduce the amount of loss for which the mandatary is liable.

La. Civ. Code. art. 3003. At the request of the principal, or when the circumstances so require, the mandatary is bound to provide information and render an account of his performance of the mandate. The mandatary is bound to notify the principal, without delay, of the fulfillment of the mandate.

> La. Civ. Code. art. 3004. The mandatary is bound to deliver to the principal everything he received by virtue of the mandate, including things he received unduly.
>
> The mandatary may retain in his possession sufficient property of the principal to pay the mandatary's expenses and remuneration.

The law of "mandate" governs one's actions performed as agent for another in a contractual relationship. It has no bearing on the liability one might bear to another under any theory of tort. It certainly has no bearing on the facts before the Court in which three individuals attended an event together, and one of the three had more physical limitations than the other two had. Plaintiffs have not asserted that the Victors caused Patsy Maddox any loss because of how they represented her in the performance of a contract.

### D.  The Theory of Voluntary Undertaking Has No Support in the Facts.

Plaintiffs' theory of the Victors' possible liability under "voluntary undertaking" was again not supported with any citation of legal authority, leaving it to Defendants to show why it does not apply.

Liability arising from a voluntary undertaking was described by the Louisiana Supreme Court in *Bujol v. Entergy Services, Inc.*, 922 So.2d 1113 (La. 2006):

> *Restatement [Second] of Torts § 324A* provides as follows:
>> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [perform] his undertaking, if
>>> (a) his failure to exercise reasonable care increases the risk of harm, or
>>> (b) he has undertaken to perform a duty owed by the other to the third person, or
>>> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Bujol,* 922 So. 2d at 1144. The Court elaborated:

> As we stated in our original decision, under the plain language of the introductory portion of *§ 324A*, an assumption of duty arises only when the defendant (1) undertakes to render services, (2) to another, (3) which the defendant should recognize as necessary for the protection of a third person. Moreover, even if a plaintiff proves the assumption of a duty under that standard and that the defendant failed to exercise reasonable care to perform that duty, he may only recover if he further proves that either (a) the defendant's failure to exercise reasonable care increased the risk of such harm; or (b) the defendant has undertaken to perform a duty owed by the employer to the injured employee; or (C) harm is suffered because of reliance of the employer or the injured employee upon the undertaking. *2004 La. LEXIS 1784, [WL] at 10*, citing *Tillman v. Travelers Indemnity Co., 506 F.2d 917 (5th Cir.1975).*

*Id.*, at 1145.

No breach of duty under the theory of gratuitous or voluntary undertaking can be gleaned from Plaintiffs' assertions against the Victors. The "undertaking" was driving Mrs. Maddox to the convention site. They did that, without incident. The alleged enhanced risk to Mrs. Maddox arose from the absence of seating on the floor level where disabled and elderly had been seated until space there ran out. The facts that Mrs. Maddox chose to sit elsewhere rather than to leave the arena, and chose to sit in seats located several steps up from the aisle, and that the Victors were with her when she made that choice, does not give rise to any theory of liability by which the Victors might possibly be held liable to the plaintiffs.

### E.   No Breach of Duty of Care is Supported.

Plaintiffs' final stab at a legal theory is a general assertion of "breach of duty of care." They fail to articulate what general duty this might be, or what is its basis in law. What Plaintiffs assert on this point is no more than "'mere theoretical possibility of recovery under local law.'" *Smallwood,* 385 F.3d at 573.

Although Plaintiffs cited no law in support of their general "breach of duty" theory, this sort of cause of action would have to arise under Louisiana Civil Code Article 2315. ("[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to

repair it"). Plaintiffs would also need to assert a more specific duty owed by the defendants to protect Patsy Maddox at the District Convention in Mobile, Alabama, and allege how the Victors breached the duty.[1] This Court has recently provided guidance as to how and when Louisiana law imposes a general duty to avoid conduct that would cause harm to others:

> To determine whether the complaint states a claim for negligen[ce] . . ., the Court turns to the substantive law of Louisiana. The source of negligence liability in Louisiana is Louisiana Civil Code Article 2315, which states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315(A). This article tells us that one who damages another by his or her "fault" is obliged to repair it. However, as the Supreme Court of Louisiana has explained, the article "does not tell us...when the author of the damage is at fault." *Pitre v. Opelousas Gen. Hosp.*, 530 So. 2d 1151, 1156 (La. 1988). "The framers conceived of fault as a breach of a preexisting obligation..., and they left it to the court to determine in each case the existence of an anterior obligation which would make an act constitute fault." *Id.*
>
> In making this determination, the Supreme Court of Louisiana has employed a "duty-risk" analysis. To establish liability for negligence, a plaintiff must prove each of the following: "(1) given the relationship and circumstances of the parties, does the law impose upon the defendant a duty of reasonable conduct for the benefit of the plaintiff, the violation of which is considered to be fault? (2) If the defendant owed such a duty, did his conduct fall short of the standard and come within the scope set by law? (3) Did the defendant's negligence in fact cause damage to the plaintiff ('cause in fact')? (4) Should any of the damage to the plaintiff be ascribed in law to the defendant, and, if so, should the defendant be

---

[1] As Watchtower points out, Plaintiffs have alleged certain statutory causes of action that could not possibly apply to the Victors because Plaintiffs have not specifically alleged facts on which to conclude that the Victors had any duty to comply with the statutory duties imposed for safety at the District Convention, or that they could have done anything to assure such compliance. Plaintiffs made conclusory allegations that "the defendants" owed statutory duties for persons' safety, but alleged no facts on which any such duty was imposed on the Victors for this event. Plaintiffs must assert specific facts. Conclusory allegations are inadequate. "A mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder." *Smallwood* 385 F.3d at 573; *AME Church* at p. 8. The only duty pled was a general duty to avoid risks caused by a defendants' actions under La. Civ. Code art. 2315.

held liable for every kind of damage done to each of plaintiff's interests ('legal cause')?" *Pitre*, 530 So. 2d at 1155.

Thus, the "threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc*., 923 So. 2d 627, 633 (La. 2006). "Whether a duty is owed is a question of law." *Id*. "The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id*. "When a plaintiff articulates a general rule or principle of law that protects his interests, it is necessary for the court to determine whether the rule is intended to protect him from the particular harm alleged, an inquiry which involves both the duty and causation elements of the negligence formulation." *Meany v. Meany*, 639 So. 2d 229, 233 (La. 1994). Stated another way, in certain cases part of the duty inquiry may be: "was the defendant under a duty to protect each of the plaintiff's interests affected against the type of damage that did in fact occur?" *Pitre*, 530 So. 2d at 1155.

"In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented." *Lemann*, 923 So. 2d at 633. In doing so, "the court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiff's harm and the defendant's conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant's activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving." *Meany*, 639 So. 2d at 233; *AME Church* at pp. 9-10(quoting *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005), and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig*., MDL No. 07-1873, Doc. 24196, pp. 9-11 (E.D. La, 18 January 2012).

"[T]he threshold issue in any negligence action is whether the defendant owed the

plaintiff a duty." *Id.* at p.10. On the facts alleged in this case, "given the relationship and circumstances of the parties," "the law [does not] impose upon the defendant a duty of reasonable conduct for the benefit of the plaintiff" because the Victors had no ability to assure "reasonable conduct" by persons over which they had no control at the convention. Moreover, Plaintiffs have not alleged that the Louisiana defendants engaged in conduct that proximately caused Patsy Maddox's injuries, *i.e.*, there were no facts on which to establish "legal cause" arising from a breach of a duty.

The analysis of general liability is made far easier in this case since Plaintiffs failed to assert facts that could give rise to a duty that the Victors had to Patsy Maddox once inside the convention arena, and facts that show that they breached such a duty.

> **F.     Plaintiffs' Declaration Adds No Probative Facts in Support of Any Theory of Recovery Against the Victors.**

As Watchtower points out in its opposition, the "Declaration of Rachel Maddox and Shannon Maddox," Exhibit "A" to Motion to Remand, Rec. Doc. 19-3, adds little to Plaintiffs' Petition other than to suggest that when co-worshippers assist each other in their worship of God, their worship creates a legal duty to guard against risks to one-another.  The Maddoxes say: "Affiants considered their mother to be in the care of the Victors, who provided their escort service to Patsy Maddox at the arranging of the Westwego Congregation of Jehovah's Witnesses church." *Id.*  Plaintiffs' unsupported belief is mere speculation with no support apart from the fact that Patsy Maddox and the Victors rode together to the convention. It creates no liability.

Similarly, the assertion that Plaintiffs' mother "compensated" the Victors for transportation costs and that Westwego "encouraged" persons similarly situated to pay for their transportation costs does not provide evidence in support of a theory of liability apart from what

could have happened during the ride but didn't.

The accident occurred due to factors out of the Victors' control. The Victors had nothing to do with planning, organizing, or operating the District Convention, and thus owed no duty under Louisiana law to Patsy Maddox. The thing by which she suffered her injury was out of their control.

Plaintiffs' "conclusory allegations, unwarranted factual inferences, or legal conclusions" do not satisfy their burden to plead facts that support some theory of liability against the Victors. *See Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010); *see also In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 07-1873, Doc. 24196, pp. 9 (quoting *Gentilello* 627 F.3d at 544) (Rule 12(b)(6) standard). Under the Rule 12(b)(6) standard, the facts alleged are assumed to be true but with that assumption they must be able to rise "above the speculative level." *AME Church* at p. 9 quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555.

> [T]he court is not bound to accept as true legal conclusions couched as factual allegations. In other words, a complaint must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. The court should not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions."

## II.   The Louisiana defendants owed no duty under Alabama law.

The Victors join Watchtower's opposition verbatim on this point. In Alabama, a Plaintiff's own negligence is a bar to recovery. "Contributory Negligence" is an affirmative defense. Ala. R. Civ. P. 8(c); Jackson v. Waller, 410 So.2d 98 (Ala. Civ. App. 1982). More importantly, a wrongful death action must be brought in a court located in Alabama by the estate representative of the deceased. Ala. Code §6-5-410. Therefore, if Alabama law applies, this lawsuit against all defendants must be dismissed because suit was brought in Louisiana by

descendants of a decedent, not her succession representative.

## CONCLUSION

For all the foregoing reasons, Defendants Patrick Victor and Kathy Victor request that this Honorable Court deny Plaintiffs' Motion to Remand.

Dated this 31st day of July, 2012.

        Respectfully submitted,

        **MONTGOMERY BARNETT, L.L.P.**

        */s/ Terrel J. Broussard*
        TERREL J. BROUSSARD
        La Bar No. 3531
        3300 Energy Centre
        1100 Poydras Street
        New Orleans, LA 70163-3300
        Telephone:   504.585.3200
        Facsimile:    504.200.8987
        Attorney for Kathy and Patrick Victor

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system this 31st day of July 2012 and notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system or by mail.

*/s/Terrell J. Broussard*