UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RACHEL MADDOX, SHANNON MADDOX, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> INTEGRO USA, INC., INTEGRO INSURANCE ) <br> BROKERS CHRISTIAN CONGREGATION OF ) <br> JEHOVAH'S WITNESSES, WATCHTOWER ) <br> BIBLE AND TRACT SOCIETY OF NEW YORK, ) <br> INC., WESTWEGO CONGREGATION OF ) <br> JEHOVAH'S WITNESSES, INC., PATRICK ) <br> VICTOR, KATHY VICTOR ) <br> ) <br> Defendants. ) | CIVIL ACTION <br><br> NO. 12-1641 <br><br> SECTION "N" <br><br> MAGISTRATE (1) |

## DECLARATION OF PATRICK VICTOR

Defendant PATRICK VICTOR, having been duly sworn and deposed, does say under penalty of perjury and attesting that he knows personally each of the following facts, stated as follows:

1. I am of the full age of majority, of sound mind, and a resident of Jefferson Parish, Louisiana.

2. My wife, Kathleen, and I are members of the English Congregation of Jehovah's Witnesses, Westwego, Louisiana, where we have worshipped God as members for many years.

3. Patsy Maddox, whom we referred to as "Sister Maddox," was also a member and fellow worshiper of God at the English Congregation of Jehovah's Witnesses, Westwego, Louisiana, for many years.

4. Sister Maddox' husband died a few years before the 2011 convention that we attended together.



5. Sister Maddox was about 69, close to 70 years old in June of 2011. She was small and thin, but she drove her own car, walked without a walker or cane, and lived on her own without any assistance that we knew of.

6. Neither Sister Maddox, nor her children, nor anyone else ever mentioned that Sister Maddox had ever fallen before we went to the convention, and my wife and I did not know that she had.

7. We drove to Mobile on Thursday afternoon, June 30, 2011, the day before the convention began, and checked into our respective rooms in our motel that was located near the convention site, the Mitchell Center, which was on the University of South Alabama campus.

8. We arrived at the convention site on Friday morning, July 1, 2011, at around the time that the introductory music had ended and the program was just beginning. We entered the arena through the main entrance, which brought us to the 2nd floor level. The Mitchell Center arena seemed to be quite full. We began to look for seats.

9. We took the elevator to the main floor to see if there were any seats left there. We didn't see any seats on the floor, and an attendant told me that the seats on the floor were full. I took the elevator back to the 2nd floor level and continued looking for seats.

10. I found some seats about 12-15 steps above the aisle. I returned to Sister Maddox and my wife, told them where they were, and asked Sister Maddox if she wanted to sit there, or preferred looking for other seats, or preferred returning to our motel rooms and returning earlier the next day. Sister Maddox said she could go up the stairs and sit in the seat without it being a problem for her. *PAV*

11. I ~~held~~ *walked with* Sister Maddox' ~~arm~~ until we got to the second flight of stairs, at which point the aisle became too narrow for us to proceed together. Sister Maddox held onto the railing

as she went upstairs. My wife and I carried her belongings so she could hold the railing and I followed behind her.

12. It did not seem to me that Sister Maddox had any trouble going up the stairs. She did not move slowly, limp or do anything else that suggested that she was having any trouble.

13. I did not see her go down or back up the stairs during the lunch break, but she and my wife told me that they had gone to the restroom after lunch, which required that they go down and back up the stairs.

14. When we left for the day near the end of the final program, I again walked with Sister Maddox until she got to the aisle with the stairs. My wife went first down the stairs, then Sister Maddox, and then me. My wife and I carried Sister Maddox' belongings again so she could hold the railing. I don't know what made her fall. She seemed to be changing her grip from one hand to the other while she was on the landing just above the last step to the 2nd floor aisle. She somehow did not get a good grip and fell.

15. Neither my wife nor I was "in charge" of Sister Maddox. She was not our "charge" or under our care. We were merely three people who were attending the program together.

16. Neither my wife nor I had anything to do with selecting the Mitchell Center for the convention. Neither of us had anything to do with planning or implementing any plan for seating for the elderly or for disabled persons. Neither of us had anything to do with training or instructing attendants at the convention. Neither of us had anything to do with any safety feature at the Mitchell Center. Neither of us solicited any contributions from Sister Maddox or from anyone else. Neither of us planned, organized, designed, programmed, or made block room reservations for the convention or any aspect of the convention.

17. Sister Maddox made her own accommodations at the motel and other than riding to the convention with us, was fully capable of caring for herself as she did every day.

18. Sister Maddox had no mental or emotional limitation of which I was aware. She was completely capable of making her own decisions, and from what I saw, she did so. She decided what she wanted to do and she did it. When I told her the options for seating, she made the choice.

19. My wife and I did not host or give a false sense of security to Sister Maddox or anyone else by promising safe keeping or full accommodations for the elderly, the infirm, or the disabled.

20. My wife and I did not require Sister Maddox to sit anywhere, including the seating that we ultimately sat in. We did not direct her away from the seating on the floor level; it was simply full. We did not force Sister Maddox to sit in any particular section. We have never hosted any convention, and we are not familiar with the risks that conventions may present to persons who are elderly, disabled or infirm.

21. My wife and I did not plan any event, let alone the convention of Jehovah's Witnesses held July 1-3, 2011, at the Mitchell Center. We provided no trained ushers, and promised no safe accommodations for anyone. We just attend conventions as others do.

22. My wife and I did not know the nature of Sister Maddox' disability. She appeared to be fully mobile and independent. We were unaware of any health limitations that she had. She seemed to walk very well for a person her age.

23. When we descended the stairs at the end of the day, Sister Maddox seemed to have no problem at all as she went down the stairs. But when she was about to leave the landing and go down the last step she seemed to fail to make contact with the railing before she stepped

forward. She fell off of the landing where the steps were not steep. The railing was there, but she just didn't appear to get a good grip on it before she moved forward.

Further Affiant sayeth not.

Signed under penalty of perjury this 29th day of July, 2012.

_____
Patrick Victor

_____
Notary Public

Jeremy D. Rush, La. Bar No. 30705
NOTARY PUBLIC
Notary ID No. 91860
State of Louisiana
My commission is issued for Life.