UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RACHEL MADDOX, SHANNON MADDOX | CIVIL ACTION |
| VERSUS | NO. 12-1641 |
| INTEGRO USA, INC., ET AL. | SECTION "N" (1) |

# ORDER AND REASONS

Before the Court is Plaintiffs' Motion to Remand (Rec. Doc. 19), which is opposed by Defendant Watchtower Bible & Tract Society of New York, Inc. ("Watchtower") (Rec. Doc. 24) and Defendants Kathy Victor and Patrick Victor ("the Victors") (Rec. Doc. 25). Also before the Court is the Victors Motion to Dismiss for Failure to State a Claim (Rec. Doc. 7), which is opposed by Plaintiffs (Rec. Doc. 23). For the reasons set forth below, the Court denies the Motion to Remand and grants the Motion to Dismiss.

## I. BACKGROUND

Plaintiffs are children of decedent Patsy Maddox ("Ms. Maddox"). Ms. Maddox was a Jehovah's Witness who worshiped at the Kingdom Hall in Westwego, Louisiana owned by the Westwego Congregation of Jehovah's Witnesses, Inc. ("Westwego"), an organization formed for the purpose of owning the Kingdom Hall. The Victors were friends of Ms. Maddox and fellow

Jehovah's Witnesses who also worshiped at the Westwego Kingdom Hall. Defendants Watchtower and the Christian Congregation of Jehovah's Witnesses, Inc. ("CCJW") are New York based corporations that operate nationally, facilitating the worship of Jehovah's Witnesses. CCJW organized and held a District Convention of Jehovah's Witnesses on July 1, 2011 at the Mitchell Center in Mobile Alabama. Ms. Maddox attended the District Convention along with the Victors, who provided her transportation to Mobile from the New Orleans area. At the District Convention on July 1, 2011, Ms. Maddox fell while descending the stairs in the Mitchell Center and sustained injuries which led to her death on September 20, 2011.

## II. DISCUSSION

**A. Legal Standard**

Because the Motion to Remand challenges this Court's jurisdiction over this case, and consequently its authority to decide the Motion to Dismiss, the Court will first consider the Motion to Remand.[1]

**1. Motion to Remand**

Generally, a defendant may remove a civil action from state court to federal court if the federal court would have had original jurisdiction over the action.[2] In assessing the propriety of

---

[1] *See Audio Visual Mart, Inc. v. Telesensory Corp.*, 96-2243, 1996 WL 495151, at *1 (E.D. La. Aug. 29, 1996).

[2] *See* 28 U.S.C. § 1441(a).

removal, the Court is guided by the principle, grounded in notions of comity and recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed; any ambiguities of fact and law should be resolved in favor of remand.[3] The removing party bears the burden of showing that federal jurisdiction exists at the time of removal.[4]

A United States District Court has jurisdiction over suits between citizens of different states wherein the amount in controversy exceeds $75,000.[5] For the purposes of diversity jurisdiction, a corporation is a citizen of its state of incorporation and the state in which its primary place of business is located, while partnerships and limited liability companies take the citizenship of their members.[6]

The Supreme Court has interpreted 28 U.S.C. § 1332 to require complete diversity of citizenship between all plaintiffs and all defendants.[7] However, even if a plaintiff names non-diverse defendants, a diverse defendant may still validly remove the case if he can demonstrate that the non-diverse defendants were improperly joined.[8] Improper joinder has two meanings: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action

---

[3] *See, e.g., Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[4] *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995); *see also De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

[5] 28 U.S.C. § 1332.

[6] 28 U.S.C. §1332(c)(2); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

[7] *Liberty Property Co. v. Roche*, 546 U.S. 81, 89 (2005).

[8] *See Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

against the non-diverse party in state court."[9] Here, Watchtower claims that the local defendants, Westwego and the Victors, were improperly joined because Plaintiffs cannot establish a cause of action against them.

A defendant claiming improper joinder based on inability to establish a claim bears a heavy burden of proof; "[t]o prove their allegation of [improper] joinder [removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action in state court."[10] The Fifth Circuit has stated that "if there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant, the parties may have been improperly joined. . . . To determine a reasonable basis upon which a plaintiff may recover, the district court may . . . 'pierce the pleadings and conduct a summary inquiry.'"[11] However, a plaintiff must first assert a theory of liability in the state court petition before he will be allowed to support the claim with summary judgment evidence; if a legal theory is not alleged in the petition, a plaintiff may not rely on affidavits to state the claim.[12] Further, a plaintiff may not procure remand by means of a post-removal amendment to his complaint if federal jurisdiction existed at the time of removal and the complaint was properly removed.[13] A court evaluating a claim of improper

---

[9]*Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*quoting Travis v. Irby*, 326 F.2d 644, 636-47 (5th Cir. 2003)).

[10]*Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994) (third and fourth alterations in original) (*quoting Dodson v. Spillada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)).

[11]*Anderson v. Georgia Gulf Lake Charles, LLC*, 342 Fed. Appx. 911, 915-16 (5th Cir. 2009).

[12]*Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995); *cf. Oiler v. Biomet Orthopedics, Inc.*, 02-3778, 2003 WL 22174285, at *3-4 (E.D. La. Sept. 17, 2003).

[13]*Cavallini*, 44 F.3d at 264.

joinder must "resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party."[14]

**2. Motion to Dismiss**

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[15] To satisfy this requirement, the statement must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests."[16]

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[17] Thus, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[18] In other words, the "[f]actual allegations must be enough to raise a right to relief above

---

[14]*Ford*, 32 F.3d at 935 (*quoting Dodson*, 951 F.2d at 42).

[15]Fed. R. Civ. P. 8(a)(2).

[16]*Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S. Ct. 992, 998 (2002) (internal citations omitted); *see also Christopher v. Harbury*, 536 U.S. 403, 416, 122 S. Ct. 2179, 2187 (2002) (the elements of the plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant").

[17]*Bell Atl. Corp. v. Twombly,* --- U.S. ---, 127 S. Ct. 1955, 1964-65, 167 L. Ed.2d 929 (2007) (internal citations and quotations omitted) (emphasis added); *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

[18]*In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) *(quoting Twombly,* 127 S. Ct. at 1974)). Relative to the notice pleading standard, the *Twombly* Court further explained:

5

the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." [19] The degree of required specificity depends on context, *i.e.* the type of claim at issue.[20]

If sufficient notice of the basis of the plaintiff's claim is provided, "dismissal will not be affirmed if the allegations support relief on any possible theory" of recovery.[21] In making this

---

The dissent greatly oversimplifies matters by suggesting that the Federal Rules somehow dispensed with the pleading of facts altogether. *See post,* at 1979 (opinion of STEVENS, J.) (pleading standard of Federal Rules "does not require, or even invite, the pleading of facts"). While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out *in detail* the facts upon which he bases his claim," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. *See* 5 Wright & Miller § 1202, at 94, 95 (Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it").

*Twombly,* 127 S. Ct. at 1964-65 n 3.

[19]*Twombly,* 127 S. Ct. at 1965. The Third Circuit Court of Appeals recently described *Twombly* as "seek[ing] to find a middle ground between 'heightened fact pleading,' which is expressly rejected . . . and allowing complaints that are not more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly,* 127 S. Ct. at 1965, 1974).

[20]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

[21]*Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999) (internal citations omitted). In *Twombly*, the Supreme Court also took the opportunity to clarify the frequently quoted principle that a Rule 12(b)(6) motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint. *Swierkiewicz,* 534 U.S. at 514, 122 S. Ct. at 998 (internal citations

determination, the Court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff."[22] Moreover, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor."[23] Finally, to the extent that the complaint's allegations are simply vague or ambiguous, a motion for more definite statement,

---

omitted). Specifically, the Supreme Court stated:

> [In *Conley v. Gibson*, 355 U.S. 41,45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957),] Justice Black's opinion for the Court [] spoke not only of the need for fair notice of the grounds for entitlement to relief but of the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [] On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of [undisclosed] facts" to support recovery.
>
> * * *
>
> Seeing this, a good many judges and commentators have balked at taking the literal terms of the *Conley* passage as a pleading standard. . . .
>
> *Conley's* "no set of facts" language has been questioned, criticized, and explained away long enough. . . . The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . . *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.[]

*Twombly,* 127 S. Ct. at 1968-69 & n. 8 (internal citations omitted).

[22]*Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir.), cert. denied, 476 U.S. 1159, 106 S. Ct. 2279 (1986).

[23]*Lewis v. Fresne,* 252 F.3d 352, 357 (5th Cir. 2001).

7

pursuant to Rule 12(e), is appropriate.[24]

B.  **Claims against the Victors**

In order to determine whether Plaintiffs have stated a claim against the Victors, the Court looks to the state court complaint.[25] In the state court petition, the only mention of the Victors is in Paragraph X, which states that "[the Victors], members of the various Jehovah's Witnesses were encouraged to and did serve as two of the primary escorts of Patsy Maddox to this District Convention, just as on prior occasions, although the assistance may have been part of the religious commitment and service as Jehovah's Witnesses."[26] While the Court accepts Plaintiffs' allegation that the Victors served as Ms. Maddox's escorts to the District Convention, this fact alone does not create any legal basis for liability.[27]

Though the Victors are not further mentioned in the Petition, Plaintiffs make several allegations of liability against the Defendants in general. Plaintiffs allege that Defendants negligently breached various duties arising from their planning and hosting an event without providing adequate accommodations for the elderly, infirm and disabled persons that they knew would be in attendance. No where do Plaintiffs specifically claim that the Victors took any part in

---

[24]*Swierkiewicz,* 534 U.S. at 514, 122 S. Ct. 998.

[25]*Cavallini*, 44 F.3d at 263.

[26]Exhibit 1 to Rec. Doc. 7 at 6.

[27]Indeed, in their Motion to Remand (Rec. Doc. 19), Plaintiffs do not attempt to support any theory of liability based on the Victors' status as escorts to Ms. Maddox. Instead, Plaintiffs impermissibly assert several new theories of liability, including "*guarde*, agency, mandate, voluntary undertaking, and/or breach of duty of care owed to the deceased." (Rec. Doc. 19-1 at 3) (emphasis in original). *Cavallini*, 44 F.3d at 263.

planning or hosting the District Convention. Further, the Victors submit the affidavit of Patrick Victor, who states that neither he nor his wife had any role in planning, organizing, designing or programming any aspect of the District Convention.[28] Accordingly, the Victors cannot be subject to any liability for planning and/or hosting the District Convention.

Plaintiffs further claim that Defendants are liable for failure to comply with the Louisiana Civil Rights Act for Handicapped Persons, the Americans with Disabilities Act ("ADA"), and Louisiana's White Cane Law. The Louisiana Civil Rights Act for Handicapped Persons provides protection for handicapped persons from discrimination in education, real estate transactions, and any program or activity which receives financial assistance from the state or any of its political subdivisions.[29] As Plaintiffs have not alleged that the Victors discriminated against them in connection with any of these enumerated activities, they have not stated a claim under the Louisiana Civil Rights Act for Handicapped Persons.

The ADA prevents discrimination in employment, public services and public accommodations;[30] as this case does not involve employment or public services,[31] the only possible theory of liability would be based on the failure of the Mitchell Center to meet the requirements

---

[28] Exhibit A to Rec. Doc. 25 at 3.

[29] La. Rev. Stat. Ann. § 46:2254 (2012).

[30] 42 U.S.C. §§ 12101-12213.

[31] The provisions of the ADA regarding public services prohibit discrimination in the "services, programs, or activities of a public entity," 42 U.S.C. § 12132, which is defined as "(A) any state or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and © the National Railroad Passenger Corporation, and any commuter authority."42 U.S.C. § 12131. These provisions are irrelevant to this case.

placed on public accommodations. While the Mitchell Center may qualify as a public accommodation under the ADA,[32] the Victors had no control over the Mitchell Center as the site of the District Convention.[33] As such, the Victors cannot be liable to Plaintiffs under the ADA.

Louisiana's White Cane Law ensures that all physically disabled people have the same rights as able bodied people to access public spaces, common carriers, educational institutions, places of public accommodation, and housing.[34] As with the ADA, the only relevant provision of Louisiana's White Cane law pertains to public accommodations. Because the Victors did not exercise any control over the Mitchell Center as the cite of the convention, they were not responsible for ensuring its compliance with this, or any, law. Plaintiffs have not stated a claim against the Victors under Louisiana's White Cane Law.

Finally, Plaintiffs state that Defendants violated the Louisiana Constitution "in their planning to invite, inviting, hosting, directing and/or failing to direct person who are elderly, infirm and/or disable [sic]."[35] While the Victors could be construed to have invited Ms. Maddox to accompany them to the District Convention, that would not necessarily create a duty to ensure Ms. Maddox's safety at the event. The other allegations do not apply to the Victors, for the reasons explained above. Plaintiffs have not stated a claim against the Victors for violating the Louisiana Constitution.

Plaintiffs have not stated a claim upon which relief may be granted against the Victors. As such, Plaintiffs claims against the Victors are dismissed.

---

[32]*See* 42 U.S.C. § 12181(7)(D).

[33]Exhibit A to Rec. Doc. 25 at 3.

[34]La. Rev. Stat. Ann. § 46:1953-1954 (2010).

[35]Exhibit 1 to Rec. Doc. 7 at 7.

### C. Claims against Westwego

Plaintiffs claim that Westwego works together with CCJW and Watchtower "as an integrated national organization."[36] Plaintiffs claim that Westwego, in connection with CCJW and Watchtower, planned and organized the District Convention and solicited the attendance of Jehovah's Witnesses such as Ms. Maddox. However, Watchtower has provided the affidavit of Willie F. Huguley, the President of Westwego, who states that Westwego exists solely to own the Kingdom Hall in Westwego.[37] Mr. Huguley denies that Westwego had any role in planning or organizing the District Convention or in arranging Ms. Maddox's attendance thereof.[38] As Westwego did not coordinate with CCJW and Watchtower to coordinate the convention, there is no basis for liability against Westwego for the same reasons articulated above regarding the Victors. Plaintiffs claims against Westwego are dismissed.

### III. CONCLUSION

Plaintiffs' claims against The Victors and Westwego are **DISMISSED**. The only properly joined defendants remaining in this case are CCJW and Watchtower, citizens of New York. (Exhibit 1 to Rec. Doc. 7 at 1). As Plaintiffs are Louisiana citizens, there is complete diversity of citizenship between the parties. The amount in controversy is also satisfied in this case. (*See* Rec. Doc. 1 at 2). The requirements of 28 U.S.C. § 1332 are thus satisfied, and the Court may exercise diversity

---

[36] Exhibit 1 to Rec. Doc. 7 at 2.

[37] Exhibit 1 to Rec. Doc. 24 at 1-2.

[38] *Id.* at 2-3.

jurisdiction over this case.  Plaintiffs' motion to remand is **DENIED**.

New Orleans, Louisiana, this 5th day of September, 2012.

_____
KURT D. ENGELHARDT
United States District Judge