UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RACHEL MADDOX, SHANNON MADDOX, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| vs. | ) | NO. 12-1641 |
| | ) | |
| INTEGRO USA, INC., INTEGRO INSURANCE | ) | SECTION "N" |
| BROKERS CHRISTIAN CONGREGATION OF | ) | |
| JEHOVAH'S WITNESSES, WATCHTOWER | ) | MAGISTRATE (1) |
| BIBLE AND TRACT SOCIETY OF NEW YORK, | ) | |
| INC., WESTWEGO CONGREGATION OF | ) | |
| JEHOVAH'S WITNESSES, INC., PATRICK | ) | |
| VICTOR, KATHY VICTOR | ) | |
| | ) | |
| Defendants. | ) | |

CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES'
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

MAY IT PLEASE THE COURT:

Plaintiffs' Motion to Compel (Document 83) should be denied on its face. Plaintiffs did not subpoena Willie Huguley for the deposition they seek to compel. Willie Huguley is not a party to this case. He is the president of Westwego Congregation of Jehovah's Witnesses, Inc., a former defendant this Court dismissed (Document 26). He agreed to assist with the case, but Plaintiffs' counsel refused to cooperate with defense counsel when he tried to resolve issues over objections to his questions. Document 83-3. Accordingly, defense counsel terminated the deposition. *Id.*

## I. NATURE OF THE PROCEEDINGS

Defendant has filed a Motion for a Protective Order to resolve the issues Plaintiffs' counsels' questions in the Huguley deposition and their written discovery raise. It adopts the statement made there about the nature and stage of the proceedings.

1

## II.  STATEMENT OF THE ISSUES

Defendant adopts and incorporates its statement of the issues in its Motion for a Protective Order here, and summarizes it by noting that Plaintiffs' further deposition of Willie Huguley would not be reasonably calculated to discovery admissible evidence because Plaintiffs spent three and one-half hours interrogating him about religious conduct, financial practices of his local congregation's religious practices and Defendant's, and subjected him to intensive, repetitive, insulting, and harassing questions for which he testified he did not know the answers.

The standard of review is the scope of discovery and the limitations provided for protection against harassment in Fed. R. Civ. Pro. 26.

## III.  LAW AND ARGUMENT

Defendant adopts and incorporates herein the citations to the record and legal authority, and the arguments made thereon, in the Motion for a Protective Order, and adds:

Fed. R. Civ. Pro. 26(b)(2)(C) provides that

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed . . . if . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . .  or the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Pro. 26(c) provides for a protective order after the parties have conferred in good faith to resolve their discovery disputes, and failing that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

As shown in Defendant's Motion for a Protective Order, Plaintiffs' counsel asked Willie Huguley repeatedly about the conduct of elders in his congregation, the English Congregation of Jehovah's Witnesses, Westwego, Louisiana, or as Mr. Huguley called it colloquially "English

Westwego Congregation."  Mr. Huguley's testimony, in conjunction with the Responses to Interrogatories, Requests for Production, and Requests for Admission included with the Motion for a Protective Order, showed that the local congregation had nothing to do with organizing or operating the convention in Mobile where Plaintiffs' mother, Patsy Maddox (the Decedent), fell and suffered the injuries out of which this case arose.  That evidence demonstrated that any involvement by local elders in Westwego with the Decedent's attendance arose out of their Scriptural commission to care for those in need.  Additionally, the evidence showed that any involvement that a local elder *might* have had (because there was no evidence that any elder *did* have) with the operation of the convention in Mobile, such involvement was on an individual and voluntary basis, not on behalf of the local congregation.  Indeed, that was the substance of Willie Huguley's Affidavit (Document 24-1) submitted in support of the Defendants opposition to Plaintiffs' Motion for Remand.  Also, Plaintiffs admitted to personal knowledge of how the Congregation of Jehovah's Witnesses in Westwego operates by their affidavits in opposition to summary judgment (Documents 67-3, 67-4, 68-3, 68-4, 69-3, and 69-4).  Moreover, they alleged that their mother "was a life-long Jehovah's Witness on a local and national level," Petition ¶ III (Document 1-1).  They were raised in a household adhering to the principles of Jehovah's Witnesses, and they have personal knowledge of how local congregations operate their business affairs separately from Defendant and separately from district conventions.  Notwithstanding this knowledge, they have pleaded a unity of business organization for purposes of their causes of action where they know no such corporate unity exists.

Plaintiffs' counsel also forged ahead, despite his clients' knowledge, and his own record knowledge of the facts, to conduct Mr. Huguley's deposition, not where the facts led him, but instead insisted on asking confusing questions that contained known factual inaccuracies with the

obvious purpose of obtaining answers that he hoped would support his case, but which were ultimately useless. The deposition was an exercise in deponent harassment and a waste of time.

For example, counsel began a line of questions by asking Mr. Huguley about Defendant using an incorrect name for Defendant. Instead of referring to Defendant as "Christian Congregation of Jehovah's Witnesses," the name appearing as it is registered with the Louisiana Secretary of State (Document 85-3), he used "Christian Congregation of Jehovah's Witnesses, *Inc.*" Huguley Deposition Transcript, p. 17, l. 25 (Document 85-2) ("Huguley, 85-2, p. __, l. __."). Moreover, he attempted to confuse Defendant with the local congregation in Wetwego. The full text reads:

> Q. Okay. Now, the church that we're talking about, this congregation, right --
> A. Uh-huh (affirmative response).
> Q. -- that has a name, right?
> A. English Westwego Congregation.
> Q. And is that a name given to the general population of people that attend the church under the auspices of a corporate name called Christian Congregation of Jehovah's Witnesses, Inc.?
> A. Inc.?
> Q. Yes.
> A. You have to help me appreciate that.
> Q. I'm not sure that I understand your comment but --
> A. I don't understand your --
> Q. Have you ever heard of the name Christian Congregation of Jehovah's Witnesses, Inc.?
> A. Christian Congregation, yes, of Jehovah's Witnesses.
> Q. And I'd just ask you to listen to my question and if you can first answer yes or no and then please explain. All right?
> A. Okay.
> Q. Have you, Willie Huguley, ever heard of the name Christian Congregation of Jehovah's Witnesses, Inc.?
> A. Not Inc.
> Q. So the answer is no, right, because you've never heard Inc. on that name, right?
> A. (Witness nods head affirmatively.)
> Q. Is that correct?
> A. Right.
> Q. Do you know anything about the organization of the corporation known as Christian Congregation of Jehovah's Witnesses, Inc.?
> A. Not Inc.

4

Q. Just listen to my question.
A. I thought I answered it.
Q. Okay. And I'm assuming that what you're telling me is you don't know anything about any corporation.
MR. MITCHELL:
I'm going to object to the form of the question.
MR. THORNHILL:
Is that correct?
MR. MITCHELL:
Because he can't answer a question on which you assume anything.
THE WITNESS:
Uh-uh (negative response).
MR. THORNHILL:
I'll rephrase the question. Thank you for your objection. Please note we're operating under the rules in this case and the rules are you object to form only and no discourse otherwise.
BY MR. THORNHILL:
Q. Do you, sir, understand the following: A corporation by the name of Christian Congregation of Jehovah's Witnesses, Inc. is a party to this lawsuit. Do you understand that?
A. Okay. You're saying that. I said I didn't know nothing about I-N-K (sic), Inc.
Q. I did say that and I'm asking you if you understand what I said.
A. I heard what you said.
Q. Did you understand it?
A. I heard what you said.
Q. That there is a corporation that is a party to this lawsuit.
A. Yes.
Q. You know that.
A. Okay.
Q. Do you know about that corporation?
A. If it's the Christian Congregation of Jehovah's Witnesses, yes.
Q. Have you seen any articles of incorporation?
A. Any articles?
Q. Articles of incorporation for this Christian Congregation of Jehovah's Witnesses, Inc.
A. Can you explain what you mean have I seen any articles?
Q. I will. There's a process for forming a juridical entity in the state of Louisiana and other states that allows for submission of documents called a charter or articles of incorporation, and it is to that which I refer when I ask you have you seen the articles or the charter that was submitted to the state for the formation of a juridical entity known as Christian Congregation of Jehovah's Witnesses, Inc.?
A. Let me get back to you on that one.
Q. It's a yes or no, sir.
A. Well, I haven't seen the article itself.
Q. So the answer is no, you haven't, right?
A. Have I seen the article, no.

5

> Q. All right. Have you seen any minutes of any meetings of the corporation, the corporation being this entity to which I've just referred as Christian Congregation of Jehovah's Witnesses, Inc.?
> A. I'm still thrown off by that word Inc. that you're mentioning.
> Q. What is it that throws you off about that?
> A. You said a corporation with Christian Congregation of Jehovah's Witnesses, Inc.
> Q. That's right.
> A. I said I haven't seen that.
> Q. You haven't seen the charter. And the second question is have you seen any minutes of meetings of people saying that it was a meeting of the corporation?
> A. Well, we have meetings each year concerning the corporation but not under that Inc., Christian Congregation, Inc.
> Q. So you're telling me that the Christian Congregation of Jehovah's Witnesses to which you belong and operate under the name of English Westwego Congregation does not hold meetings and keep minutes as a corporation, correct?
> MR. MITCHELL:
> Object to the form of the question.

*Id.*, p. 17, l. 16 – p. 22, l. 25.  This line of questions was especially egregious because of its misrepresentations to the witness of simple facts that were intended to confuse him and to induce him to admit untruths that would contradict the written record for no purpose whatsoever, other than to embarrass the witness.

The first misrepresentation was the confusion of Defendant with the local congregation, but he shunted attention from that obvious mistake to a less obvious and simpler one by calling Defendant by its proper name and adding the usual and customary suffix "Inc." at the end.  *Id.*, p. 17, l. 25.  After defense counsel objected to Plaintiffs' counsel's improper assumption of what the witness knew in a question, and counsel's demand that he have no interruptions other than "objections to form," he then misrepresented his own pleading by stating that "Christian Congregation of Jehovah's Witnesses, *Inc.*" was the defendant.  *Id.*, p. 20, ll. 3 – 6.  He then used that misrepresentation as a lever to argue with, admonish, and intimidate the witness.  Although Huguley and defense counsel tried to deal with the misrepresentation and cooperate with Plaintiffs' counsel, it ultimately took 14 transcript pages worth of questioning to resolve it.  On

6

page 31 the final exchange on the "Inc." issue appears with regard to Defendant, but that was not the end of the matter.

> But when you say Inc., I know I-N-K is ink, too. So you're saying incorporated.
> Q. Yes, sir. I-N-C period is an abbreviation for incorporated.
> A. Uh-huh (affirmative response).
> Q. Does that change your previous answers?
> A. Well, they're a corporation.
> Q. Who is they?
> A. The Christian Congregation of Jehovah's Witnesses, Incorporated.
> Q. And they're in New York City.
> A. Yes.
> Q. All right. And so that's the people, those people in New York, whoever they are, officers and directors of whom you don't know make some appointment of people in Westwego under the auspices of an English Westwego Congregation, correct?
> A. (Witness nods head affirmatively.)
> Q. Is that correct?
> A. Yes.

*Id.*, p. 31, ll. 1 – 23.

Counsel then took the confusion he had created to turn to the topic of the local congregation to attack Mr. Huguley's knowledge of the corporation over which he has presided. Between pages 31 and 36 counsel twisted the facts, using the confusion created over "Inc." to further confuse the retired postal worker (*id.*, p. 17, ll. 7 – 15) into refuting that he even knew of the corporation over which he was named as president (Document 24-1).

> Q. Do I understand correctly that those of you who attend a church in Westwego attend a church that has the name of the Westwego Congregation of Jehovah's Witnesses, Inc.?
> A. Uh-huh (affirmative response).
> MR. MITCHELL:
> Object to the form of the question.
> BY MR. THORNHILL:
> Q. Is that correct?
> A. I thought you said English Westwego Congregation.
> Q. Well, you said something about an organization called English Westwego Congregation without Inc. My question to you is are you familiar with the Westwego Congregation of Jehovah's Witnesses, Inc.?
> A. No.

7

> Q. You've never heard of it.
> A. No, not the Westwego Congregation. We're the English Westwego Congregation.
> Q. Is that a separate name with a charter?
> A. Yes.
> Q. So your organization in which you are involved is not the Westwego Congregation of Jehovah's Witnesses, Inc., it is instead, as you understand it, the English Westwego Congregation.
> A. Yes.
> Q. Right?
> A. Yes.
> Q. Does it have officers like presidents, vice-presidents?
> A. Yes.
> Q. All right. Among the entity that you know as English Westwego Congregation, do those people operate under a charter issued by the state of Louisiana?
> A. Yes.

*Id.*, p. 33, l. 10 – p. 34, l. 23.

It was obvious that Huguley was answering about the congregation in which he worships and then confused it with the corporation formed to own property to provide a Kingdom Hall for Jehovah's Witnesses in Westwego. Document 24-1. This confusion became clear and the harassing questions of counsel proved to be for naught on pages 35 – 36.

> A. The English Westwego Congregation of Jehovah's Witnesses.
> Q. All right. And that's a charter separate from Westwego Congregation of Jehovah's Witnesses, Inc., correct?
> A. No. We're all -- that's the charter itself that we filed with the state.
> Q. Okay. And so the charter of the name that you know about is English Westwego Congregation.
> A. Yes.
> Q. Correct?
> A. Yes.
> Q. Of Jehovah's Witnesses.
> A. Yes.
> Q. And does it have I-N-C period at the end?
> A. Can I get back with you on that to make sure?
> Q. Well, just tell me what you know.
> A. Well, as far as I know, I don't know that.
> Q. Okay. You're not sure?
> A. Right.

*Id.*, p. 35, l. 15 – p. 36, l. 13.

8

Huguley realized his confusion and asked if he could "get back with you on that to make sure?" because he did not know the answers to counsel's questions and counsel confirmed that he was not sure. He obviously wanted to refer to the records as authority, and he had not reviewed any documents before the deposition. *Id.*, p. 137, ll. 13 – 19. Plaintiffs' counsel subjected Mr. Huguley to this intimidation and harassment for no purpose whatsoever.

The deposition transcript included with the Motion for a Protective Order speaks for itself. The deposition demanded to be stopped and must not be resumed.

## CONCLUSION

For all the foregoing reasons and those set forth in the Motion for a Protective Order adopted and incorporated herein by reference, Defendant prays that the Motion to Compel be denied and the protection sought be granted to shield Willie Huguley from further harassment.

Dated: 6 May 2013.

                                          Respectfully submitted,
                                          By /s/Ted M. Mitchell
                                          Ted M. Mitchell     La. Bar No. 20964
                                          2955 Ridgelake Drive, Suite 207
                                          Metairie LA 70002-3618
                                          504-236-3966 – voice
                                          504-273-2220 – fax

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system this 6th day May 2013 and notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system or by mail.

                                        /s/Ted M. Mitchell