UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RACHEL MADDOX, SHANNON MADDOX, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> vs. ) <br> ) <br> INTEGRO USA, INC., INTEGRO INSURANCE ) <br> BROKERS, CHRISTIAN CONGREGATION OF ) <br> JEHOVAH'S WITNESSES, WATCHTOWER ) <br> BIBLE AND TRACT SOCIETY OF NEW YORK, ) <br> INC., WESTWEGO CONGREGATION OF ) <br> JEHOVAH'S WITNESSES, INC., PATRICK ) <br> VICTOR, KATHY VICTOR ) <br> Defendants. ) | CIVIL ACTION <br><br> NO. 12-1641 <br><br> SECTION "N" <br><br> MAGISTRATE (1) |

**PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT, CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES, INC.'S, MOTION FOR PROTECTIVE ORDER**

**MAY IT PLEASE THE COURT:**

Plaintiffs, Rachel Maddox and Shannon Maddox, through undersigned counsel, submit its Memorandum in Opposition to the Defendant, Christian Congregation of Jehovah's Witnesses, Inc.'s ("CCJW"), Motion for Protective Order [*r.d.* 85], filed on May 6, 2013.

**INTRODUCTION**

CCJW has filed a Motion for Protective Order under Fed R. Civ. Pro. 26(c) contending Plaintiffs intend to inquire into religious principles or doctrine under some theory

of "clergy malpractice." CCJW distorts reality in its arguments apparently claiming that because it is a registered nonprofit entity, it is exempt from the applicable civil laws of the states and USA. This case is based on state law of Louisiana and under conflicts of laws principles, Alabama punitive damages may apply, all as shown in the petition. The federal law regarding accommodating the disabled, elderly and infirm at such conventions may also apply, as shown in the petition and prior memoranda on the law responding to defense motions. Certainly, specific acts and omissions of the defendants in violation of legal principles established by law are referred to in the petition and form the basis of discovery, e.g., the deposition of Huguley and other depositions that were set, but unilaterally cancelled by CCJW and Old Republic.

    Accordingly, as will be shown in greater specificity below, the premises of the CCJW motion asserting that this case is a claim for clergy malpractice, involving religious practices, and harassing questions is clearly inconsistent with the facts, the petition, the CCJW Statement of Facts and related judicial admissions of CCJW regarding the claims of the Maddox's. Although, as will be shown below, inquiry into the manner in which the convention was organized, conducted and funded, e.g., whether there was compliance with security and safety protocols reasonably required for handling thousands of elderly and infirm who were specifically invited, the broader concepts of general religious practices of CCJW or doctrinal beliefs of CCJW is admittedly not relevant. Duty/risk analysis under

Louisiana law is obviously at issue in this case and there is no doubt that duties apply to District Conventions, especially if the money collected from invited guests benefits the organizers and operators of the convention[1].

Plaintiffs point out the observations of Magistrate Judge Sally Shushan in the recent status conference with all counsel of record on May 16, 2013, where she made it clear that future depositions should not be stopped by defense counsel.  She also issued an Order regarding her ruling. [ *r.d.* 95].  In addition, it was made clear in the status conference that the obligations at issue are only civil obligations, not religious obligations, that this is a claim based on civil principles and obligations established by law, which to some extent, CCJW has acknowledged.

## STATEMENT OF FACTS

CCJW's claim in its Memorandum in Support of its Motion for Protective Order that CCJW did not give the decedent Patsy Maddox assurances of safety, care, custody and control contradict that which CCJW has previously filed with this court.  In "CCJW's Statement of Material Facts That Present no Genuine Issue..." (*See r.d. 59-2)* CCJW has several statements

---

[1] The Court should note that, on information and belief, the money solicited from invited convention attendees is collected from the attendees and used for convention expenses first and then the remainder made available to sponsor subsequent events and/or sent to CCJW in New York.  Standard process safety protocols were apparently neglected, according to the testimony of Huguley, one who has previously handled the job of usher at the conventions and in this case was a participant in the clean up after the convention.  The full scope of the planning and operation of the conventions is a legitimate issue for the depositions and the written discovery.

of fact showing that this fact pattern falls under the legal precepts that are recognized by law. For instance, the first five paragraphs acknowledge that Ms. Maddox attended the convention, fell, suffered injuries, and died while attending the convention. In ¶5, CCJW admits it leased the premises and in ¶6, it indicates the "Christian Congregation had custody and control of the convention premises." In ¶7, CCJW admits that the "Christian Congregation designated the floor and the seats immediately adjacent to the floor of the Mitchell Center as seating for the elderly and disabled attendees, and those who traveled with them." Mr. Huguley, the President of one of the local Jehovah's Witnesses Churches, elaborated with color photographs showing the entire bottom section of the Mitchell Center was filled with elderly and infirm *and those traveling with them*. The risks associated with inviting and failing to accommodate the elderly and infirm in lower levels, but instead placing in the lower levels those better able to navigate steep steps to upper levels is apparent.

In fact, Mr. Huguley, clearly admitted the allegations in the petition that CCJW invited, solicited, and in the case of Ms. Maddox made sure she had a ride to the convention and a room in the area so she could attend the District Convention. As testified by Mr. Huguley, an elder, Mr. Grant Butler was responsible: "he would check with her [Ms. Maddox] to make sure if she was going to the convention**, every elderly and infirm**, to make sure they have a ride or transportation or financial need or room in need or whatever it might be." *Huguley depo, at pp. 189:17-25,* quoted in full below [emphasis added].

As shown in the petition, this claim is based on the civil legal premise that the District Convention was planned, organized and operated with the elderly and infirm specifically invited to participate in the District Convention. The CCJW District Convention organizers knew the churches in the district that were designed to attend the convention and the number of elderly and disabled persons who were specifically invited and solicited to attend these conventions as testified to in the deposition of Willie Huguley. See the following excerpts showing these facts.

> pg. 178:4-8
> Q. She was on the list as infirm?
> A. Yes.
> Q. Your church kept a list?
> A. We had a list of those who was elderly and infirm.
>
> pg. 179:1-4
> Q. But you did have a list and she was on the list of infirm, correct?
> A. She was part of the elderly and infirm.
>
> pg. 186:19-24
> Q. What you know is that there was a list kept by your church of the elderly and infirm and Patsy Maddox was on it, correct?
> A. Yes, she was on it.
> Q. You saw the list?
> A. Yes.
>
> pg. 188:19-25
> Q. Did you make up the elderly and infirm list?
> A. Yes.
> Q. And was that the elderly and infirm list on which Patsy Maddox was listed on July 1st of 2011?
> A. Yes.

pg. 189:17-25
Q. And Grant Butler was responsible for making sure that she is one of the elderly and infirm in your church who was taken care of, right?
A. Well, he would check with her to make sure if she was going to the convention, every elderly and infirm, to make sure they have a ride or transportation or financial need or room in need or whatever it might be.

## STANDARD OF REVIEW

Under Rule 26( c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending......The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person for annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26( c)(1). As the movant, CCJW has "[t]he burden.....to show the necessity of [a protective order]" by " a particular and specific demonstration of facts as distinguished from stereotyped and conclusory statement." *In re Terre Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). "Orders prohibiting discovery by deposition are particularly disfavored." *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).

## ARGUMENT

The written discovery in this case is the subject of Plaintiffs' Motion to Compel.  On 21 May 2013, a Response Memorandum was filed by CCJW which essentially promised supplemental responses, but the facts requested have not been provided.

***1. Risks of injury, not religion were at issue in the deposition of Huguley:*** In *r.d. 85-1, CCJW Motion for Protective Order,* CCJW attaches the deposition transcript of Huguley at *r.d. 85-2*.  Several statements are made by CCJW in its memorandum that are clearly contradicted by the deposition.  For instance, CCJW contends the deposition of Huguley includes at pp. 204 to 212 references to "elders fulfilling their Scriptural commission to shepherd widows, the elderly and the disabled members of the congregation."  To the contrary, the facts as set forth by CCJW in *r.d. 59-2, CCJW Statement of Facts, No. 17* was the basis of the inquiry.  This statement is read in the record at p. 198 of Huguley's deposition and involves the CCJW statement of fact that admits known risks of seating being filled.  CCJW's characterization of the questions and answers from 204 - 212 is clearly inconsistent with the factual inquiry that showed those, who like Huguley before, served as attendants or ushers knew, and the CCJW executives in New York knew of the risk of the elderly, infirm and disabled not being able to sit on the floor or the lower level seats because of failure of CCJW attendants to accommodate the elderly, infirm and disabled.

Secondly, the questions before the termination of the deposition by CCJW counsel related to the knowledge of the witness with respect to why Ms. Maddox was not accommodated with a seat in one of the sections for the elderly, infirm and disabled, rather than the issues of religion as CCJW argues. *See Huguley depo, pp. 205-06.*

***2.   Huguley admitted that the Westwego congregation was assigned by the convention planners (CCJW) responsibility for cleaning part the convention center***: Although CCJW argues that the affidavit of Huguley was accepted to support its dismissal from the case on motion for summary judgment, the basis of the argument is seen on *r.d. 85-1, p. 7 of 24.*   Directly contradicting his affidavit, Huguley testified that the Westwego congregation was assigned by the convention planners the cleaning of part of the convention center. *See Huguley depo, p. 137, line 23 to 138, line 25.*  Moreover, Huguley admitted that Ms. Maddox was specifically invited, as were all other elderly, infirm and disabled on the list at the Westwego Congregation. *See Huguley depo, pp.178 - 195,* particularly *pp. 194, line 11 to 195, line 16.*  Contrary to the prior Huguley affidavit, his deposition shows that the Westwego Congregation, including him specifically made sure the elderly, infirm and disabled, like Ms. Maddox, had transportation and a room accommodations at the convention in Mobile.  These admissions contradict the responses to Interrogatories (such as numbers 1 and 7 argued inconsistently by CCJW), and contradict the Requests for Admission (such as

numbers 2, 3, 10 and 11 argued inconsistently by CCJW), as well as the Requests for Production (such as number 6).

***3. Documents produced by CCJW, e.g., Exhibit 1 to the Huguley deposition, show the responsibilities of members to make sure the elderly are invited and are able to attend the convention.*** CCJW established the territory and the activity for the convention, including making sure the elderly attend the convention. Beginning at p. 122 of Huguley's deposition, documents were examined relating to making sure the "elderly publishers" who are "the people of age" receive assistance. On inquiry as to what that means, Mr. Huguley admitted that this directive required his church to assist the elderly, like Ms. Maddox with transportation to the convention and finances, if needed. *See Huguley depo, pp. 122:14 - 124:14.*

The documents produced by CCJW show the direction of CCJW to Huguley and others in local leadership to make sure the elderly, infirm and disabled, e.g., Ms. Maddox was transported to the convention. Similarly, although CCJW argues there were no invitations, the documents, e.g., Exhibit 1 to the deposition of Huguley, and the testimony of Huguley show to the contrary at *Huguley depo, pp.124:24 - 126:13.* The inquiries in the deposition were on the basis of documents and the admissions of Mr. Huguley that he was directed by CCJW to invite persons in a territory to the convention, contrary to his earlier affidavit and the arguments of CCJW.

Respectfully, the CCJW arguments contradicting the testimony of Huguley are clearly not accurate and do not support a protective order. Instead, the Huguley deposition supports inquiry into the organizational structure as was attempted in the deposition of Huguley.

Plaintiffs have stated this in their pleadings, correspondence and memoranda filed to date that the civil obligations imposed affect all people, including those operating fund-raising for churches, such as CCJW and the District Conventions. Neither the discovery to date, nor the pleadings require reference to, nor support by biblical or canon principles. The CCJW arguments to the contrary are an effort to distort the record relating to simple negligence principles referenced in the petition showing that Ms. Maddox was invited by CCJW and the participating CCJW organizations to attend the District Convention, where she was in their care, custody and control.

***4. The elderly, infirm and disabled were specifically invited and asked to donate to the operation of the convention.*** Expenditures for safety and security, compliance with obligations to accommodate with the money donated are relevant. Similarly, on information and belief, the issue of the organizational structure and relationship between the CCJW and the District Convention is best seen in the handling of the donations at the convention. If CCJW or the entity did not keep records of donations by Maddox and others at the convention as required by the tax law, the operation may not be a legitimate 501C3 organization.

***5. This is not a claim for clergy malpractice, e.g., sexual harassment, ejectment, counseling malpractice or other such claims within the definition of clergy malpractice.*** The duties imposed on the operators of the District Convention, including the admitted responsibility of the operators to provide the elderly, infirm and disabled with suitable seating accommodations was admitted in the design, planning and operation of the District Convention. Here the facts are that the decedent was admittedly expressly invited, transported and if necessary housed. The one deposition which has been started showed that the CCJW designated the Westwego Congregation a territory and the obligation to invite the elderly, infirm and disabled - the elders were to make sure these targeted people were invited, transported and housed. Also, the attendants and the attendees knew of the intention to provide for the elderly, infirm and disabled seating at the convention.

Breaches of the obligations by the CCJW and its operators of the convention were in the context of a function where donations were expressly solicited for the operation of the convention, which when explored may be found to be distinctly separate from CCJW. Therefore although CCJW was responsible for the convention and benefitted, it may not have received all the money. The fictional arguments of CCJW are that discovery should not be allowed because CCJW claims it is a church, although it does not keep records as a church is required to keep to show donations in excess of $250. The nature of the organization and the function of the organization, including the purpose of its financial obligations as it relates

to its motive for inviting the elderly, infirm and disabled are open to exploration in the discovery process.

The one deposition we have been allowed to date was terminated, as shown above, for reasons unrelated to claims of CCJW that questions were being asked about issues of faith or actions based on faith. Mr. Huguley testified that they don't use the word "usher" because that is a word used by "churches." Instead, they use the word "attendant" to describe the duties of the persons responsible for safety and seating at the convention. *Huguley depo, pp. 140 -141.*

"Q: What does an attendant do?

A: I just mentioned attendant serving friends in the congregation, seating arrangement, making sure everything safety. Making sure a person's walking, not to be noisy with the children running. Attendant has responsibilities." *Huguley depo, p. 140, lines 8-14.*

These admitted responsibilities are not based on faith or issues of religion. They are based on safety, particularly in light of the fact the elderly, infirm and disabled are specifically invited, transported, housed at the expense of the convention if necessary. The assumption of these obligations and duties are not based on faith. They are based on the legal principles related to performing with care the duties imposed when assumed for the handling of the elderly, infirm and disabled, especially when these people are further solicited for donations to the organizers, CCJW.

The law in the Fifth Circuit in cases such as *Sanders v. Case View Baptist Church*, 134 F. 3d 331 (5th Cir.1998) recognizes this distinction between civil obligations and issues of faith. The duties to exercise care for the elderly, infirm and disabled in one's care, custody and control, as was Ms. Maddox, is a civil obligation of the laws of states and the USA, recognized by special statutory and jurisprudential principles that do not relate to faith. As in *Sanders,* where the Fifth Circuit rejected the claim of clergy malpractice as applicable to counseling resulting in injury, the protection of people in the care, custody and control of CCJW, who were admittedly expressly invited, transported, collectively housed and then designated seating for safety, cannot be said to be related to faith. Breaches of these obligations are not allowed to occur without recompense under the law. Such acts of negligence relating to injury and death of persons under the admitted care, custody and control of the facility and the individual elderly, infirm and disabled are not protected by one's faith. See *Sanders, supra*, 134 F. 3d at 337. For to do so would immunize all acts of negligence by individuals or organizations who claimed that their religious beliefs allowed them to be negligent. Such a distortion of the law cannot be condoned.

The CCJW Motion for Protective Order obviously misstates the testimony of Huguley, misstates the CCJW Statement of Facts, judicially admitting it having custody of the facility and the seating arrangements, even to properly and safely seat the elderly, infirm and disabled.

## CONCLUSION

Unequivocally, the restrictions sought by CCJW are complete immunity from discovery in a civil action where CCJW has admitted it invited, solicited, transported and collectively housed the elderly, infirm and disabled. Further it admits that the attendants are responsible for safety and seating of the elderly, infirm and disabled. As shown in the sections of argument above:

*1. Risks of injury, not religion were at issue in the deposition of Huguley;*

*2. Huguley admitted that the Westwego congregation was assigned by the convention planners (CCJW) responsibility for cleaning part of the convention center and that persons who were attendants are taught how to perform their duties;*

*3. Documents produced by CCJW, e.g., Exhibit 1 to the Huguley deposition, show the responsibilities of members to make sure the elderly are invited and are able to attend the convention;*

*4. The elderly, infirm and disabled were specifically invited and asked to donate to the operation of the convention; and,*

*5. This is not a claim for clergy malpractice, e.g., sexual harassment, ejectment, counseling malpractice or other such claims within the definition of clergy malpractice. These responsibilities admitted by CCJW are not based on faith or issues of religion.*

Risks of injury and safety were admitted by Huguley to be the responsibility of the attendants. This is not an issue of faith or religious practice. Further, Huguley admitted the

Page -14-

organizers of the convention assigned roles to attendants and trained the attendants how to perform the obligations to properly seat the elderly, infirm and disabled in designated seating. Where steps were not taken to properly and safely accomplish this assumed role, the obligations to perform these admitted duties have been breached.

**Respectfully, it is clear that in this case, the CCJW Motion for Protective Order should be denied.**

**Respectfully submitted,**

**THORNHILL LAW FIRM, A PLC**

 /s/Tom W. Thornhill
**TOM W. THORNHILL #12776**
**1308 Ninth Street**
**Slidell, Louisiana 70458**
**(985) 641-5010**
**(985) 641-5011 fax**
**tom@thornhilllawfirm.com**

---

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of May, 2013, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

   /s/Tom W. Thornhill
**TOM W. THORNHILL**

---